793 P.2d 715

**William R. BURT, Jean Burt, and Cynthia Burt Beebe, in their collective capacity as the Last Board of Directors and Statutory Trustees of Deer Creek, Inc., an Idaho corporation now dissolved, Plaintiffs–Appellants,**

**v.**

**CLARENDON HOT SPRINGS RANCH, INC., an Idaho corporation, and Lloyd J. Walker, and Stephen W. Boller and Mary Boller, husband and wife, Defendants–Respondents.**

**William R. BURT, Jean Burt, and Cynthia Burt Beebe, in their collective capacity as the Last Board of Directors and Statutory Trustees of Deer Creek, Inc., an Idaho corporation now dissolved, and Deer Creek Ranch Co., an Idaho partnership, Plaintiffs–Appellants–Cross Respondents,**

**v.**

**Patrick D. RYAN, and Ann Ryan, husband and wife, Clarendon Hot Springs Ranch, Inc., an Idaho corporation, Defendants–Respondents–Cross Appellants,**

**and**

**Stephen W. Boller and Mary Boller, husband and wife, Defendants–Respondents.**

No. 17803.

Court of Appeals of Idaho.

May 31, 1990.

Kneeland, Korb & Collier, Ketchum, for plaintiffs-appellants-cross-respondents. Bruce J. Collier argued.

Lloyd J. Walker, Twin Falls, for defendants-respondents-cross-appellants.

WALTERS, Chief Judge.

We are again asked to review a trial court's resolution of a dispute arising out of a series of real estate transactions between Patrick Ryan, Clarendon Hot Springs Ranch, Inc. (Clarendon), Deer Creek, Inc. (DCI), and Lloyd Walker. DCI has since been dissolved and is represented by statutory trustees, William Burt (hereinafter Burt), Jean Burt and Cynthia Burt Beebe.[1] We previously remanded this case for additional findings and conclusions of law. *Deer Creek Inc. v. Clarendon Hot Springs, Inc.*, 107 Idaho 286, 688 P.2d 1191 (Ct.App.1984). On remand the district court concluded that, under the terms of two exchange agreements, Clarendon must convey a disputed parcel of real property to DCI. The court also required Clarendon to pay crop and grazing losses incurred by DCI for the dispossession of the disputed parcel. Conversely, the district court held that Clarendon was entitled to compensation which Clarendon had overpaid DCI under an exchange agreement, plus prejudgment interest. DCI appeals, arguing that the trial court erred in awarding prejudgment interest on the amount due to Clarendon. Clarendon cross-appeals, contending that the trial court erred by requiring Clarendon to convey the disputed parcel to DCI

---

1. For the sake of continuity we will refer to the Burts collectively as DCI.

even though DCI had materially breached the contract. Clarendon further argues that DCI is not entitled to damages for crop and grazing losses or prejudgment interest on those losses. Both sides request attorney fees on appeal. We affirm the trial court's decision compelling Clarendon to convey the disputed parcel to DCI. We also affirm the decision to award crop and grazing losses. We reverse the decision to allow prejudgment interest on the damage awards for both the amount of Clarendon's overpayment and the crop and grazing losses due to DCI. We award no attorney fees on appeal.

We begin by summarizing the facts relevant to this appeal. On June 20, 1969, R.B. Randell deeded parcels I, II and III to DCI. Payment was secured by a mortgage. In turn, DCI deeded the property to Ryan's attorney, Lloyd Walker, who acted as trustee for Patrick Ryan. The property was financed by Patrick Ryan (who later became the majority stockholder in, and alter ego of, Clarendon). The parties agreed that the deed to Walker would remain unrecorded until Ryan satisfied DCI's obligation to Randell.

The following information represents the crux of the dispute before us in this appeal. In December, 1970, Ryan (alter ego of Clarendon) and DCI (through its representative William Burt) entered into an "exchange agreement." The agreement detailed that DCI was to receive parcel I plus $50,000. In exchange, Ryan was to receive the heretofore unmentioned parcels labelled IV and V and the surface rights to eighty acres of mining claims from DCI. The validity of this exchange agreement became the focal point of litigation.

Prior to the December transaction with DCI, Ryan formed Clarendon with Walker as president. In December, 1971, Walker recorded the transfer of parcels I, II and III from DCI to himself despite the fact that Ryan's satisfaction of DCI's obligation to Randell had not occurred. Walker then conveyed parcels I, II and III to Clarendon. The net effect of these activities resulted in Clarendon having legal title to parcels I, II and III, while DCI remained liable to Randell for the mortgage on those properties. Thereafter, Ryan failed to make regular payments resulting in DCI's default on its obligation to Randell. Consequently, Randell foreclosed the mortgage and obtained a judgment against DCI.

In January, 1975, Burt, operating as president of DCI, corresponded with Ryan suggesting that the exchange agreement be cancelled. Burt argued that since Ryan owed $45,343 to DCI in order to fulfill the obligation to Randall, the arrangement should be terminated and Walker, as escrow agent, should return the deed for parcels IV and V. The parties disputed the status of the exchange agreement after this correspondence. In September, 1975, Clarendon obtained a development loan which was designed to enable Ryan to satisfy the Randell judgment (thereby dispensing with the lien on parcels I, II and III caused by Randell's judgment against DCI) and to pay DCI for title to parcels IV and V.

At this time, DCI gave another deed to Clarendon covering parcels II, III, IV and V, apparently unaware that its June, 1969, deed to Walker for parcels I, II and III had been recorded and that Walker had conveyed the same property to Clarendon. In exchange, DCI demanded $86,000 and the original "unrecorded" deed to Walker. While this cash amount was far in excess of the amount due under the exchange agreement, Clarendon complied with the demand, allegedly under duress because it could not otherwise obtain the balance of the development loan without the land.

Burt expected that the net result of this transaction would vest title to parcels II, III, IV and V in Clarendon and DCI would retain parcel I. However, the transaction resulted in Clarendon having title to all five parcels because of the previous transfer by Walker to Clarendon. Clarendon denied that it was required to convey parcel I to DCI.

DCI filed an action against Clarendon asserting, among other things, that Clarendon was obligated to convey parcel I to DCI under the exchange agreement. Clarendon counterclaimed for damages caused

by DCI's alleged willful, malicious and deliberate conduct in demanding a greater payment than actually was due under their agreement. The district court denied relief to both parties. DCI then brought the previous appeal, 107 Idaho 286, 688 P.2d 1191 (Ct.App.1984). In that proceeding, we vacated the judgment and remanded the case, directing the district court to make additional findings and conclusions with respect to whether Clarendon was obligated under the exchange agreement to convey parcel I to DCI and whether Clarendon had overpaid DCI for parcels IV and V.

After conducting further evidentiary hearings on remand, the district court made the following legal conclusions relevant to the issues on the present appeal: (1) the exchange agreement was in full force and effect on September 17, 1975, the date Clarendon satisfied the Randell judgment; (2) the parties did not alter the exchange agreement by oral modifications; (3) enforcement of the exchange agreement required that DCI reimburse Clarendon for the amount of payment it tendered beyond what was required under the exchange agreement, together with prejudgment interest; and (4) Clarendon wrongfully denied DCI possession of parcel I, and DCI was consequently entitled to damages for lost crop and grazing revenue plus prejudgment interest. This appeal followed.

### I. Prejudgment Interest on the Overpayment

■ We first address the issue raised by DCI: whether prejudgment interest should be awarded on the amount of overpayment for which DCI is liable to Clarendon. In order for Clarendon to recover prejudgment interest on the amount of overpayment, the principal amount due must have been either liquidated or capable of being mathematically and definitely ascertainable. *Davis v. Professional Business Services, Inc.*, 109 Idaho 810, 712 P.2d 511 (1985); *Child v. Blaser*, 111 Idaho 702, 727 P.2d 893 (Ct.App.1986) (review denied). The district court held that Clarendon had overpaid DCI when it paid the $86,000 demanded by DCI pursuant to the exchange agreement. The record discloses conflicting evidence regarding the existence of an overpayment pursuant to the exchange agreement. The parties also produced conflicting evidence regarding *the amount* of overpayment. A letter from Lloyd Walker dated October 6, 1975, approximated the amount of overpayment at $40,000. In its counterclaim, Clarendon listed $35,000 as the balance owed under the exchange agreement thereby fixing the amount of overpayment at $51,000. In the amended answer and counterclaim dated September 20, 1987, Clarendon listed the amount of overpayment as $46,000.

DCI also submitted a professional accounting at trial, as evidence. Originally, DCI had attached the accounting in a correspondence to Clarendon illustrating why the exchange agreement should be abandoned. This correspondence was initially introduced at trial to prove that the exchange agreement had been modified. After finding that the exchange agreement was valid and unmodified, the trial court seized upon the accounting results to establish the amount Clarendon had owed under the exchange agreement. Thus, the trial court subtracted this amount from the $86,000 Clarendon had paid DCI, in calculating the overpayment amount at $40,656.08. Neither party on appeal has contested whether the trial court erred in arriving at this amount of overpayment, nor do we intimate any view on that issue. However, the amount found due by the court was arrived at through consideration of contested evidence regarding an unliquidated debt. Consequently, we conclude that the amount of overpayment by Clarendon was not sufficiently definite to support a prejudgment interest award.

### II. Conveyance of Parcel I

We next address the issue raised by Clarendon that the trial court erred in ordering it to convey parcel I to DCI. Clarendon maintains that under the trial court's findings of fact DCI had materially breached the exchange agreement, thus discharging Clarendon's reciprocal duty to perform. Specifically, Clarendon argues that the trial court's findings that DCI had failed to con-

vey the surface mining rights and that DCI had overcharged Clarendon establish that DCI breached the exchange agreement. However, Clarendon does not seek forfeiture of the contract. Rather, it submits that the proper remedy is to maintain the sales agreement but to give DCI a corresponding credit of $16,000 in exchange for parcel I. In effect, Clarendon argues that the trial court erred by ordering specific performance of the exchange agreement—conveying parcel I to DCI—in lieu of awarding DCI money damages. Accordingly, Clarendon submits two issues: (1) whether there was a failure of consideration of the exchange agreement between itself and DCI, and (2) whether awarding DCI money damages is the appropriate remedy.

### A. Failure of Consideration

■ We first examine Clarendon's assertion that it need not convey parcel I because of failure of consideration. It does not appear that this position was ever asserted in the trial court. Nonetheless, Clarendon predicates its argument not on evidence submitted at trial, but on the trial court's findings of fact and conclusions of law. Clarendon relies on § 274 of the RESTATEMENT OF CONTRACTS (1932) which states:

(1) In promises for an agreed exchange, any material failure of performance by one party not justified by the conduct of the other discharges the latter's duty to give the agreed exchange even though his promise is not in terms conditional. An immaterial failure does not operate as such a discharge.

(2) The rule of Subsection (1) is applicable though the failure of performance is not a violation of legal duty.

We are aware of no case in Idaho which adopts this rule. However, § 274 identifies the general rule for failure of consideration. *See also* RESTATEMENT (SECOND) OF CONTRACTS § 235 *et seq.* (1981). In *World Wide Lease, Inc. v. Woodworth,* 111 Idaho 880, 728 P.2d 769 (1986) (review denied), we stated that failure of consideration generally refers to a failure of performance of the contract. "Failure" of consideration may be distinguished from "lack" of consideration, which applies to instances where there was no consideration to support the existence of a contract. *World Wide, supra,* at 884–85, 728 P.2d at 773–75. In *World Wide,* we noted that a proper contract may be formed initially but—due to supervening events—where the promised performance subsequently fails, the contract is rendered unenforceable. *World Wide, supra,* at 884, 728 P.2d at 773. Clarendon maintains that the trial court's findings regarding the overcharge by DCI and DCI's failure to convey the surface rights evidence material breaches of the exchange agreement. However, implicit in the findings of the trial court is the enforceability of the exchange agreement. Essentially, the trial court held that these acts were not material failures of performance by DCI. We find no compelling argument which would justify overturning that decision.

### B. Specific Performance

■ We next address Clarendon's suggestion that specific performance was an inappropriate remedy. Specific performance of a land contract is not a matter of right but rests in the sound discretion of the trial court. *Suchan v. Rutherford,* 90 Idaho 288, 410 P.2d 434 (1966). We find no abuse of discretion by the trial court in selecting specific performance as a remedy.

### III. Crop and Grazing Losses

We next turn to Clarendon's argument that the trial court erred in awarding DCI damages for crop and grazing losses. Clarendon maintains that the rights and duties of the parties have not yet been completely litigated, precluding a legal basis for the award. Clarendon also claims that DCI is not entitled to restitution damages because there was no unjust enrichment, and that the damages were based on mere speculation. On remand, the trial court concluded that DCI was entitled to parcel I since September 7, 1975. Clarendon assailed that finding on appeal. We have upheld the trial court's decision against that attack. *See* Part II, *supra.* We do not find in the record before us any indication that Clarendon ever raised the issues relating to restitution, unjust enrichment, or speculative damages to the trial

court. Neither is there any indication in the record that Clarendon objected to the evidence submitted by DCI on crop and grazing losses. We will not address an issue raised for the first time on appeal. *Baldner v. Bennett's, Inc.,* 103 Idaho 458, 649 P.2d 1214 (1982).

### IV. Prejudgment Interest on Crop and Grazing Losses

 Lastly, we address Clarendon's argument that the trial court erred in awarding DCI prejudgment interest on the amount found due for crop and grazing losses. The trial court relied on the testimony of Harold Schmidt—an agent of DCI who farmed parcel I prior to Clarendon's takeover—to determine the fair market value of the crop and grazing losses. Since the damage amount rested solely on Schmidt's testimony regarding the fair market value of the crops that could be raised and a utilization of a "reasonable estimate" of grazing value, we conclude that the basis for the amount in question was not sufficiently definite to support an award of prejudgment interest. *See Child v. Blaser,* 111 Idaho 702, 727 P.2d 893 (Ct.App.1986) (review denied). We hold that the trial judge erred in awarding prejudgment interest for crop and grazing losses in this case.

In sum, we reverse the trial court's award of prejudgment interest both for the award of restitution to Clarendon for the overpayment by Clarendon to DCI and for the award of crop and grazing losses to DCI. We affirm the trial court's determination entitling DCI to parcel I. Finally, we affirm the trial court's determination on the amount of crop and grazing losses, exclusive of prejudgment interest. The case is remanded for entry of an amended judgment consistent herewith.

Both parties having prevailed in part, we award no costs or attorney fees on appeal.

SWANSTROM, J., and McQUADE, J., pro tem., concur.