853 P.2d 607

**SUN VALLEY LAND AND MINERALS, INC., an Idaho corporation, Plaintiff–Respondent–Cross Appellant,**

v.

**William R. BURT, Jean Burt and Cynthia Burt, in their collective capacity as the Last Board of Directors and Statutory Trustees of Deer Creek, Inc., a dissolved Idaho corporation, and Deer Creek, Inc., an Idaho partnership, Defendants–Appellants–Cross Respondents,**

and

**John H. Blasius and Blanche Blasius, husband and wife, and All Persons Unknown Claiming Any Legal or Equitable Right, Title, Estate, Lien, or Interest In the Property Described In the Complaint Adverse To Plaintiff's Title Thereto, and Doe 1–10 Inclusive, Defendants.**

No. 19719.

Court of Appeals of Idaho.

May 26, 1993.

**864**

Kneeland, Korb, Collier, Legg & Haukaas, Ketchum, for appellant. Bruce J. Collier argued.

Hawley, Troxell, Ennis & Hawley, Ketchum, for respondents. Carol L. Shephard argued.

WALTERS, Chief Judge.

In this appeal, William, Jean, and Cynthia Burt (the Burts) contend that the district court erred when it granted summary judgment quieting title to real property in Sun Valley Land & Minerals, Inc. (Sun Valley), after determining that Sun Valley had received the property from a bona fide purchaser. The court also granted summary judgment to the Burts upon Sun Valley's claim that the Burts had slandered Sun Valley's title. The Burts challenge the quiet title decision, while Sun Valley cross-appeals the slander of title ruling. We affirm both judgments.

This appeal is the result of years of disputes regarding certain real estate transactions in Blaine County starting in 1951, involving many parties and covering thousands of acres. Lower court decisions regarding many of these transactions have already been appealed twice in *Deer Creek, Inc. v. Clarendon Hot Springs Ranch, Inc.*, 107 Idaho 286, 688 P.2d 1191 (Ct.App. 1984) and *Burt v. Clarendon Hot Springs Ranch, Inc.*, 117 Idaho 1042, 793 P.2d 715 (Ct.App.1990) (Burt v. Ryan). What was once a fight over a vast area has been distilled to a controversy over one acre of land and the rights to the continuous flow of ½ inch of hot water from a geothermic spring.

First, we find it helpful to provide a list of the players in this saga. The Burts appear collectively as the last board of directors and trustees of a dissolved corporation, Deer Creek, Inc. (DCI). They claim the right and title to the one acre and ½ inch of hot water. Sun Valley appears claiming the same interests through a series of transactions beginning with First Federal Savings and Loan Association of Twin Falls (First Federal), which became the first mortgage holder of the property, and as the district court later found, a bona fide purchaser. The property was mortgaged to First Federal by Clarendon Hot Springs Ranch, Inc. (Clarendon), having come originally from DCI. Patrick Ryan was the majority shareholder and alter ego of Clarendon. Lloyd Walker was Ryan's attorney, Clarendon's president, and for a time acted as a trustee.

**Facts**

We present in abbreviated form the chain of transactions creating the basis for this dispute. In 1951, R.B. Randell conveyed real property by warranty deed to Lyle Potter. As stated in the deed, the sale included:

A 20–foot wide right of way for a ditch near the road to carry water from the spillway on the present dam site to other lands owned by [Potter] East of the real property hereby conveyed.

. . . .

the right to ½ inch continuous flow of hot water from Clarendon Hot Springs, and one acre of land rectangular in form east of the dam and south of and adjacent to the 20–foot wide ditch right of way herein before granted.

In 1961, Potter conveyed thousands of acres to DCI by a warranty deed which described the property by legal subdivisions of twenty different sections. The deed also conveyed the one acre of land, the ½ inch of water from Clarendon Hot Springs, and the 20 foot ditch right-of-way, but the deed did not state in which legal subdivision—or even in which section—the one acre is located. Five years later, in 1966, DCI mortgaged all of this property it had acquired from Potter to John Hancock Mutual Life Insurance Company (John Hancock).[1] The mortgage and a correction

1. The John Hancock mortgage specifically excluded four parcels of property, as exceptions labeled (a) through (d), over which there is no dispute. Following these exceptions, the mortgage mentions the one acre, the ditch right-of-way and the ½ inch of hot water. It is questionable whether this paragraph was intended to be a fifth exception to the property covered by the mortgage, or whether it was intended to include the one-acre parcel within the mortgage.

mortgage were recorded that year, and not released until 1978.

In July, 1969, Randell conveyed by warranty deed to DCI other real property, carrying the following legal description, which we label description A:

SW ¼ SW ¼ of Section 26, S ½ SE ¼ of Section 27, and N ½ NE ¼ of Section 34, Township 3 North, Range 17 E, Boise Meridian, Blaine County, Idaho.

The deed was recorded on August 5, 1969. In a previous decision, the district court found that after this conveyance, DCI owned all the property within which the disputed one-acre parcel might be located.

On September 15, 1975, DCI conveyed by warranty deed to Clarendon property with a different legal description, which we label description B:

S ½ SE ¼ of Section 27, and N ½ NE ¼ of Section 34, and NW ¼ of Section 34, all in Township 3 North, Range 17 E, Boise Meridian, Blaine County, Idaho.

The deed reserved to DCI the ditch right of way and "all water rights appurtenant thereto, including decreed water rights on Deer Creek" but did not specify any exception covering the one acre and ½ inch of hot water. The deed from DCI to Clarendon was recorded on September 24, 1975.

In the meantime, on September 17, 1975, Clarendon executed a note and mortgage to First Federal, covering the same property conveyed by DCI to Clarendon, namely the land encompassed by description B. First Federal recorded the mortgage on September 18. The mortgage did not except DCI's interest in the one acre and the ½ inch of hot water. On September 29, Sawtooth Title issued a title insurance policy to First Federal which also did not include such an exception.

Eventually, Clarendon fell behind in its mortgage payments to First Federal, which began judicial foreclosure proceedings. On April 19, 1982, the court granted First Fed-

eral summary judgment against Clarendon, entitling the former to foreclose and directing that the property be sold. DCI moved to intervene but the motion was denied. The property was sold, and in 1984, First Federal bought it at a sheriff's sale, the certificate for which was recorded on May 25, 1984.

Six months later, First Federal assigned its right, title and interest in the Clarendon note and mortgage to Traveler's Mortgage Corp. (Traveler's). The assignment also encompassed the summary judgment against Clarendon awarding foreclosure, the Sheriff's Certificate of Sale on Foreclosure, and the property. First Federal conveyed the land to Traveler's by quitclaim deed, and the notice of the assignment was recorded on November 16, 1984. Traveler's redeemed the property from the lien holders and received a Sheriff's deed on June 6, 1985. A Sheriff's Certificate of Sale of Real Estate on Execution, recorded on February 4, 1987, confirmed that Clarendon's interest was sold at public auction, without excluding the one acre and ½ inch of hot water, to Traveler's Leasing Corp., (previously Traveler's Mortgage Corp.). A series of quitclaim deeds brought the property into Sun Valley's possession in 1988.

In 1989, Sun Valley commenced the instant action against the Burts, as representatives of DCI, to quiet title to the property. Cross motions for summary judgment followed, and the court entered final judgment for Sun Valley on April 21, 1992. The Burts appeal from that judgment and from the court's two memorandum decisions preceding the judgment, filed on August 8, 1991, and October 31, 1991. Sun Valley cross appeals, arguing that the court erred when it determined that the Burts had not slandered Sun Valley's title by sending to Blaine County title companies a copy of the court's decision, and its

Because this is a summary judgment matter, we must construe any ambiguity in favor of the non-moving party (the Burts). Accordingly, we will recognize that the John Hancock mortgage purported to include the one acre-tract in the mortgage, although that tract is not identified specifically by a proper legal description.

Nevertheless, as will be noted later in this opinion, the evidence shows that the one-acre tract is located in Section 27, T. 3 N., R. 17 E., B.M. Reference to that section does not otherwise appear in the legal descriptions recited in the Hancock mortgage.

findings and conclusions on remand, entered March 28, 1988.

## Standard of Review

The rules governing summary judgments are well known. Summary judgment is appropriate only when genuine issues of material fact are absent and the case can be decided as a matter of law. I.R.C.P. 56(c); *Moss v. Mid–American Fire and Marine Insurance Co.*, 103 Idaho 298, 647 P.2d 754 (1982). Controverted facts are viewed in favor of the party resisting a motion for summary judgment. Where, as here, a jury has been requested, the nonmoving party is entitled to the benefit of reasonable inferences drawn from the evidentiary facts. *Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982).

*Whitlock v. Haney Seed Co.*, 110 Idaho 347–48, 715 P.2d 1017–18 (Ct.App.1986).

### 1. First Federal was a Bona Fide Purchaser

#### 1a. A Mortgagee May Become a Bona Fide Purchaser

As stated by the district court, the resolution of Sun Valley's quiet title action depends on whether First Federal took the land as a bona fide purchaser and was able to shelter Sun Valley in that protective status. The court answered this question in the affirmative. The Burts assert several errors in connection with this ruling, initially arguing that a mortgagee may not become a bona fide purchaser because the mortgage does not convey title.

 A bona fide purchaser is one who takes real property by paying valuable consideration and in good faith, i.e., without knowing of adverse claims. I.C. § 55–606; § 55–812. The theory behind the rule is to protect innocent purchasers and to allow them to obtain and convey unsullied interests. Generally, a person must take property through a "conveyance" in order to be afforded the protective status of a bona fide purchaser. Although a mortgage is a lien, it is also considered a conveyance, which includes "every instrument in writing by which an estate or interest in real property is created, alienated, *mortgaged,* or encumbered, or by which the title to any real property may be affected, except wills." I.C. § 55–813 (emphasis added). A mortgagee may become a bona fide purchaser. I.C. § 55–606; *Imig v. McDonald,* 77 Idaho 314, 291 P.2d 852 (1955) (defining a bona fide purchaser as one who takes for value, upon the belief of the validity of the vendor's claim of title, and without notice of adverse claims); *Spencer v. Steward,* 37 Idaho 610, 218 P. 369 (1923) (mortgagee, with first recorded interest and without notice of adverse claim, may take as a bona fide purchaser); *See also,* 59 C.J.S. *Mortgages* § 232 (1949); 55 AM.JUR.2d *Mortgages* § 324 (1971). Further, even though a mortgage is considered a lien:

> The *analogy* of the mortgage as passing title is universally retained to the extent that the mortgagee may be recognized as a bona fide purchaser for value without notice, provided there are present the elements of valuable consideration, good faith and want of notice.

(Emphasis added.) THOMPSON ON REAL PROPERTY, § 4778 at 501–02 (1963) *citing Spencer, supra.*

#### 1b. Rights Depend on Priority, Consideration and Good Faith

Purchasers of real property must record their interests in order to protect them from other claimants. In Idaho, the first recorded conveyances of real property, taken in good faith and for valuable consideration, except leases not exceeding one year, have priority over subsequent purchasers or mortgagees of the same property. I.C. § 55–812. Our Supreme Court has stated:

> The purpose of the recording act in a race-notice jurisdiction, like Idaho, is to allow recorded interests to be effective against unrecorded interests when the recorded interest is taken for a valuable consideration and in good faith.

*Langroise v. Becker,* 96 Idaho 218, 220, 526 P.2d 178, 180 (1974); *see also Farm Bureau Finance Co. v. Carney,* 100 Idaho 745, 605 P.2d 509 (1980). The interests noted by the Supreme Court include mort-

gages. *Langroise, supra; Spencer, supra;* I.C. §§ 55–812, –813.

■ First Federal recorded its mortgage before the 1975 conveyance from DCI to Clarendon was recorded. The instrument first recorded takes precedence where the recording party is a holder for valuable consideration and in good faith. *Langroise, supra; see also* 59 C.J.S. *Mortgages* § 243.

### 1c. First Federal Took for Consideration and in Good Faith

There is no dispute that First Federal's mortgage was supported by valuable consideration. Therefore, our next inquiry is whether it had notice of claims that could adversely affect its interest in the property mortgaged by Clarendon. Our inquiry focuses upon what First Federal knew before the transaction creating the mortgage with Clarendon, including First Federal's recordation, was completed on September 18, 1975. 59 C.J.S. *Mortgages* § 236; 55 AM. JUR.2d *Mortgages* § 326. The Burts argue that First Federal had notice of their interest when it recorded. The district court disagreed, holding that the one acre and the appurtenant ½ inch of hot water were not excepted from DCI's warranty deed to Clarendon and were not recorded in the title index. Therefore, First Federal had no reasonable way of learning of them.

■ The Burts focus on the John Hancock mortgage, which they assert should have put First Federal on constructive notice. The district court did not address the effect of this mortgage on First Federal. The John Hancock correction mortgage was recorded in 1966. It was in force in September, 1975, when DCI conveyed the property to Clarendon and when Clarendon mortgaged the property to First Federal. Generally speaking, these facts would cause First Federal to be charged with knowing that the mortgage existed, and would require it to investigate. *Froman v. Madden,* 13 Idaho 138, 88 P. 894 (1907); 59 C.J.S. *Mortgages* §§ 236–37. A mortgagee of real property is charged with notice of, and takes in subordination to, any prior properly recorded and unreleased mortgage. *Merchants Trust Co. v. Davis,* 49 Idaho 494, 290 P. 383 (1930).

■ The John Hancock mortgage is irrelevant, however, because it addresses different property than is at issue in this case. The record establishes that the disputed one acre and hot water, to be used for a homesite and heating for the home, rests in Section 27, Township 3 North, Range 17 E, Boise Meridian, Blaine County, Idaho, as described in description B. The Hancock mortgage does not address that section. Therefore, it could not put First Federal on notice that some exceptions applied to the property Clarendon mortgaged.[2]

The Burts attempted to buttress their argument by presenting the affidavit of a licensed surveyor who had prepared a "survey map" showing the location and dimensions of the one-acre homesite and its relationship to an established section corner. This survey map showed the one acre to be located in the S ½ of the SE ¼ of Section 27, Township 3 N., Range 17 E., Boise Meridian. The surveyor gave a second affidavit making it clear that the "location indicated on the map was approved by Mr. Burt." The surveyor stated that he was "unable to determine a specific or unique location based on the description provided," meaning the description contained in the Randall–Potter deed and in the John Hancock mortgage. In summary, the surveyor's affidavits show that the descriptions

---

**2.** If the one acre in question was intended to be an *exception* from the property covered by the Hancock mortgage, the description of the one acre gave no indication from which parcel of mortgaged property the acre was excluded. Moreover, if a particular acre could be identified as the *excepted* tract, a potential purchaser or mortgagee of the one acre would not be on notice that he was dealing with encumbered property because, in fact, he was not.

On the other hand, if the one acre was intended to be an *additional* parcel of property covered by the John Hancock mortgage, then the description of its location and dimensions was so vague that a prospective purchaser or mortgagee of land in Section 27, T. 3 N., R. 17 E., B.M., would have no notice that the John Hancock mortgage encumbered property in that section.

given in the John Hancock mortgage were inadequate to put First Federal on notice it was dealing with property in Section 27 that was encumbered by the John Hancock mortgage.

The Burts also cite the district court's judgment of May 24, 1988, which reformed the September 15, 1975, corporation warranty deed from DCI to Clarendon.[3] In the judgment, the court quieted title in DCI to real property described as "parcel I" and ordered Clarendon to convey title to DCI after DCI had paid Clarendon $48,500. The judgment articulated that DCI was the owner of real property referred to generally in the proceedings as "parcel I" and specifically described as "SW-¼ SW-¼ of Section 26, Township 3 North, Range 17 East, Boise Meridian, Blaine County, Idaho." The judgment specified that the deed be reformed to articulate DCI's interest in the one acre of land and ½ inch of hot water. The Burts argue that this judgment establishes that the conveyance to Clarendon was never intended to include the one acre and ½ inch of hot water and that Clarendon never held title to the land in order to mortgage it to First Federal in September, 1975.

A second judgment was entered on September 14, 1988, essentially restating the first, but increasing the amount to be paid by DCI to Clarendon and reforming the deed without referencing the one acre and hot water. The record offers no explanation why the court omitted the reference to these items from the September judgment. Without passing on the effect of the two judgments, we reiterate that the one acre and hot water in question are located in Section 27, not Section 26.

### 2. The Shelter Rule Applies to Protect Sun Valley

■ The "Shelter Rule" provides that one who is not a bona fide purchaser, but who takes an interest in property from a bona fide purchaser, may be sheltered in the latter's protective status. This rule is established in many jurisdictions. *See* 77 AM.JUR.2d *Vendor and Purchaser* § 718 (1975); ANNOT., *Right of One Who, with Knowledge of Outstanding Equity, Derived His Interest to Real Property From or Through a Bona Fide Purchaser, to same Protection as Latter,* 63 A.L.R. 1362 (1929). However, it has not been articulated in Idaho. Idaho code § 55–606, describing a bona fide purchaser, was adopted from a nearly identical section of the California Civil code, therefore it is presumed to carry the construction given by the jurisdiction from which the statute was taken. *Siegel Mobile Home Group, Inc. v. Bowen,* 114 Idaho 531, 757 P.2d 1250 (Ct.App.1988) *citing Johnson v. Casper,* 75 Idaho 256, 270 P.2d 1012 (1954). When construing their own statute, the California courts have established that a bona fide purchaser can transfer good title to a person who has notice of a prior adverse equity or right. *Jones v. Independent Title Co.,* 23 Cal.2d 859, 147 P.2d 542 (1944); *Rose v. Knapp,* 153 Cal.App.2d 379, 314 P.2d 812 (1957). *See also W.W. Planning, Inc. v. Clark,* 10 Ariz.App. 86, 456 P.2d 406 (1969).

■ There are two exceptions to the rule: (1) where the interest held by a bona fide purchaser was obtained from a grantor with notice of an outstanding interest in the property, and the property is reconveyed to the grantor; and (2) when the property is reconveyed from a bona fide purchaser to a person guilty of a violation of a trust or duty with respect to the property. 77 AM.JUR.2d *Vendor and Purchaser* §§ 720, 721. The exceptions do not apply in this case. Therefore, Sun Valley is entitled to take the property, even if it knew of DCI's adverse claims, because it is cloaked in First Federal's status as a bona fide purchaser.

### 3. Preclusive Effect of Prior Adjudications

The Burts assert that Sun Valley is precluded from bringing its action based on the doctrines of res judicata (claim preclu-

---

3. We note that separate district judges have been involved at this stage. The Hon. James J. May entered the order reforming the deed from DCI to Clarendon. The Hon. Daniel B. Meehl entered the judgment quieting title in Sun Valley.

sion) and collateral estoppel (issue preclusion), applied in reference to the district court's rulings in the case the parties describe as *Burt v. Ryan,* reported on appeal at 117 Idaho 1042, 793 P.2d 715 (Ct.App. 1990). We agree with the district court that these doctrines do not apply.

 Generally stated, both doctrines apply to prevent wasteful relitigation of issues which have already been presented, or at least should have been presented, in prior adjudications. *Anderson v. City of Pocatello,* 112 Idaho 176, 731 P.2d 171 (1987); *Joyce v. Murphy Land & Irrigation Co.,* 35 Idaho 549, 208 P. 241 (1922). The common element between the doctrines is that the party against whom preclusion is asserted must have been a party or in privity with a party to the prior adjudication.

It is clear that Sun Valley was not a party to any of the previous actions addressing the property. The question, then, is whether Sun Valley was in privity with Clarendon, having obtained the property through First Federal, Clarendon's mortgagee.

 Privity is defined as a mutual or successive relationship to the same property rights, or such an identification in interest of one person with another as to represent the same legal rights. 50 C.J.S. *Judgments* § 788 (1947); *Hackler v. Hackler,* 37 Wash.App. 791, 683 P.2d 241 (1984). It would appear that Sun Valley's interest was the same as First Federal's, as successor to Clarendon's interest, in that both asserted claims to the land free of DCI's reservations. The established rule, however, is that

> a decree against the mortgagor with respect to property does not bind a mortgagee whose interest was acquired before the commencement of the suit, unless he was made a party to the proceedings.

*Chase National Bank v. City of Norwalk, Ohio,* 291 U.S. 431, 438, 54 S.Ct. 475, 478, 78 L.Ed. 894 (1934); 50 C.J.S. *Judgments* § 803; *See also In Re Scott,* 829 F.2d 865 (9th Cir.1987) (Wright, J., dissenting). First Federal obtained its mortgage interest before commencement of the action between the Burts (through DCI) and Ryan (through Clarendon). Res judicata and collateral estoppel do not apply here.

### 4. No Slander of Title

 The district court granted summary judgment to the Burts on Sun Valley's claim that the Burts slandered Sun Valley's title. The court found that the Burts had "merely informed" title companies of the Burts' contentions raised in this lawsuit and sent the companies copies of the judgment in their favor against Clarendon. The court briefly described the elements of a slander of title claim: (1) uttering or publishing slanderous statements; (2) when the statements are false; (3) with malice; and (4) resulting in special damages. *Matheson v. Harris,* 98 Idaho 758, 572 P.2d 861 (1977). The court concluded, and we agree, that the statements were not shown to be false or published with malice. Summary judgment is appropriate when the party opposing the motion fails to establish the existence of an essential element of its case. *Badell v. Beeks,* 115 Idaho 101, 102, 765 P.2d 126, 127 (1988) *citing Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Garzee v. Barkley,* 121 Idaho 771, 774, 828 P.2d 334, 337 (Ct.App.1992). "In such a situation, there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

### Conclusion

We conclude that the district court correctly determined that Sun Valley was sheltered in First Federal's status as a bona fide purchaser. First Federal did not have notice of DCI's adverse claims. First Federal was a proper mortgagee, however, and its successor in interest, Sun Valley, was not precluded by prior adjudications from bringing its quiet title action. Finally, summary judgment was appropriate when Sun Valley failed to establish essential elements of its slander of title claim. Based on the foregoing, we affirm the judgment

of the district court quieting title in Sun Valley, and the judgment concluding that the Burts had not slandered Sun Valley's title. We award no attorney fees to either party on appeal, and determine that each side must bear their own costs.

SWANSTROM, J., and SMITH, J., pro tem., concur.