**Frank and Barbara Richart, Fred and Nancy Seigler, James and Peggy Sharp, Mark and Claudia Pfaff, Paul and Catherine Arthaud, et al. v. Bryan S. Jackson and Nancy F. Jenkins**

[758 A.2d 319]

No. 98-157

Present: Amestoy, C.J., Dooley, Johnson and Skoglund, JJ., and Jenkins, Supr. J., Specially Assigned

Opinion Filed May 26, 2000

Motion for Reargument Denied July 18, 2000

*Douglas D. Le Brun* of *Dinse, Knapp & McAndrew, P.C.,* Burlington, for Plaintiffs-Appellees.

*Vincent A. Paradis* and *Daniel P. O'Rourke* of *Bergeron, Paradis & Fitzpatrick,* Essex Junction, for Defendants-Appellants.

**Skoglund, J.** Defendants appeal from a summary judgment of the Chittenden Superior Court enforcing plaintiffs' right to the use and enjoyment of certain improvements located in a common beach area on defendants' property, and requiring defendants to pay a share of the insurance costs for the beach area and improvements. Defendants contend the court erred in ruling that they were bound by the terms of a Declaration of Conditions, Restrictions and Uses relating to the beach area and improvements because: (1) the failure to record the Declaration prior to the conveyance of their property to a predecessor-in-title extinguished any easements or covenants as applied to defendants; and (2) the Declaration was recorded outside defendants' chain of title. Plaintiffs have cross-appealed, contending the court erred in failing to enforce a provision in the Declaration requiring defendants to contribute to the overall maintenance costs of the beach-front improvements. We affirm in part and reverse in part.

Defendants and plaintiffs own properties located in the Town of Charlotte. All of the properties in question derive from a common grantor, J. Graham Goldsmith. In 1986, Goldsmith began to develop the property by dividing and selling lots. The first eight developed lots comprised Black Willow Farms Phase I. Because not every lot had beach access to Lake Champlain, Goldsmith granted to each Phase I lot that was sold an easement for a right-of-way leading to a common beach area on two lots he continued to own. Reference to this easement and right-of-way appeared in every deed of the Phase I lots as they were sold. The deeds provided:

> Included herewith in common with others is an easement and right of way over a ten foot wide pedestrian access trail as the same is shown on the aforementioned Plan to provide access to the shores of Lake Champlain, together with the use of a 60' x 60' beach area as shown on the aforementioned Plan.

Plaintiffs are the owners of five lots in Phase I of the subdivision and members of the Black Willow Farms Homeowners Association. The use easements encumber Lots 10 and 11 of what became known as Black Willow Farms Phase II development.

In March 1987, Goldsmith and the Association executed a Declaration that subjected the access and beach area to several conditions, restrictions, and uses and recognized the Association's right to construct and maintain a ten-by-ten foot storage shed and to use, maintain, and store a fifty-foot dock. The Declaration also required

the owners of Lots 10 and 11 to each pay one-tenth of the annual budget for maintenance of the area, including the purchase of general liability and indemnification insurance. For unexplained reasons, the Declaration was not recorded until March 17, 1992.

On May 10, 1991, Goldsmith conveyed Lot 11 to Barry J. Mossman, defendants' predecessor-in-interest. The 1991 warranty deed from Goldsmith to Mossman stated in part:

> The within parcel is subject to and has the benefit of a pedestrian easement and right of way along the southerly boundary, in common with others, in the area generally depicted on the Plat as "10 Foot Wide Right of Way," and in the beach area on the within parcel as generally shown on the Plat.

Although the warranty deed contained the easement, no mention was made of the Declaration, and Mossman did not recall receiving a copy of the Declaration or being aware of its existence. The Association installed a dock in the beach area in the summer of 1992. Thereafter, the dock was used by residents to access boats during the summer, and was stored on land adjacent to the beach area during the winter. On May 31, 1994, Mossman conveyed Lot 11 by warranty deed to defendants. The deed contained the same easement language that was in the Goldsmith-to-Mossman deed, but again did not reference the Declaration.

A dispute arose between defendants and the Association over the applicability of provisions in the Declaration, culminating in defendants' removal of the dock from their property. Plaintiffs thereupon filed a complaint against defendants, seeking a permanent injunction prohibiting defendants from interfering with their use and enjoyment of the right-of-way, beach area, and dock. Defendants filed an answer denying plaintiffs' right to use the dock and storage area, and a counterclaim seeking to enforce certain provisions of the Declaration against plaintiffs, including the obligation to obtain general liability insurance to cover the common beach area and improvements. The parties filed cross-motions for summary judgment.

The court issued two separate decisions. In the first, it ruled in favor of plaintiffs' right to use and maintain the shed and dock in the common beach area. In the second, it ruled that defendants were obligated to pay one-tenth of the cost of insurance for the common beach area and structures thereon, but not the costs of construction and maintenance of the improvements. Plaintiffs' motion for reconsideration was subsequently denied, and these appeals followed.

In reviewing a grant of summary judgment, we apply the same standard as the trial court: summary judgment should be granted when, taking all allegations made by the nonmoving party as true, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. See *Madden v. Omega Optical, Inc.*, 165 Vt. 306, 309, 683 A.2d 386, 389 (1996).

Defendants contest the court's ruling that their property was subject to plaintiffs' use and enjoyment of the beach improvements. The court grounded its decision on several theories. We address only its conclusion that defendants were on inquiry notice of the improvements, as we find that ruling to be dispositive.[1] Plaintiffs averred in their statement of undisputed material facts that "[a]t the time the defendants purchased the Property, a dock existed on the beach easement, and was in regular use by the owners of Black Willow Farms Phase I, including plaintiffs and their predecessors-in-title." Defendants' responsive statement disputed only the representation that the dock was in "regular use" by plaintiffs. Thus the existence of the dock at the time of defendants' purchase was admitted and uncontroverted. See V.R.C.P. 56(c)(2); *Samplid Enters., Inc. v. First Vermont Bank*, 165 Vt. 22, 25-26, 676 A.2d 774, 776 (1996). Based upon its finding that "the dock was in use at the time Defendants purchased the property," the court concluded that "[d]efendants should have been on inquiry notice" concerning plaintiffs' interest.

The principle of inquiry notice is a venerable one in Vermont. We have explained the concept as follows:

> [T]he courts of equity are vigilant . . . to see that [a] purchaser shall not be allowed to take any benefit resulting from any want of care and watchfulness. If there exist any circumstance of suspicion, whereby he might be said to be fairly put upon his guard, and he neglects to follow out the inquiry, he is affected with notice of all facts, which such inquiry would have brought to his knowledge, and if he purchases with his eyes shut, he acquires only the title of his grantor impeded with its attendant equity.

*Hart v. Farmers & Mechanics Bank*, 33 Vt. 252, 264-65 (1860). This principle has been continually reaffirmed in Vermont and elsewhere.

---

[1] The court also ruled, without elaboration, that "[b]ecause the Declaration was recorded before the conveyance to Defendants, the Defendants are charged with constructive notice of the easements contained therein."

See, e.g., *Tomasi v. Kelley*, 100 Vt. 318, 323, 137 A. 196, 198-99 (1927) ("The circumstances being such as then to put defendant upon inquiry, he is chargeable with notice of all such facts as his inquiry, had it been made, would have revealed."); *In re Ryan*, 851 F.2d 502, 507 (1st Cir. 1988) ("Inquiry notice follows from the duty of a purchaser, when he has actual or constructive knowledge of facts which would lead a prudent person to suspect that another person might have an interest in the property, to conduct a further investigation into the facts."); *Methonen v. Stone*, 941 P.2d 1248, 1252 (Alaska 1997) ("It is well established that a purchaser will be charged with notice of an interest adverse to his title when he is aware of facts which would lead a reasonably prudent person to a course of investigation which, properly executed, would lead to knowledge of the servitude."); *Hall v. Allen*, 771 S.W.2d 50, 53 (Mo. 1989) (en banc) (purchaser of real estate is charged with notice of easement where existence of servitude is apparent upon ordinary inspection of premises).

 The uncontroverted facts supported the court's finding that the dock was in use at the time of defendants' purchase, and this finding supported the conclusion that defendants were on inquiry notice of plaintiffs' interest. See *Methonen*, 941 P.2d at 1252 (purchaser "is considered apprised of those facts obvious from an inspection of the property"). A diligent inquiry, in turn, would have readily revealed the existence of the Declaration, which was discovered and disclosed in defendants' own title insurance report. Accordingly, it is immaterial whether, as defendants claim, the Declaration was technically outside their chain of title, as defendants were not bona fide purchasers without notice. See *Hemingway v. Shatney*, 152 Vt. 600, 602-04, 568 A.2d 394, 396 (1989) (Vermont is "notice" state and timing of recording affects only rights of subsequent purchaser "without actual or inquiry notice"); see also *Hall*, 771 S.W.2d at 53 (although easement was not recorded in defendants' chain of title, ordinary inspection would have revealed existence of boat dock and footpath leading to it, and thus defendants may "properly be charged with notice of a servitude in favor of the plaintiffs").

While not disclaiming knowledge of the dock and shed, defendants nevertheless argue that plaintiffs' interest in the use of these improvements was extinguished when defendants purchased their lot from a predecessor-in-title who had no notice of plaintiffs' interest when he purchased the property. The argument is premised on a doctrine known as the "shelter rule," which generally provides that

"one who is not a bona fide purchaser, but who takes an interest in property from a bona fide purchaser, may be sheltered in the latter's protective status." *Sun Valley Land & Minerals, Inc. v. Burt*, 853 P.2d 607, 613 (Idaho Ct. App. 1993); see also *Reiner v. Danial*, 259 Cal. Rptr. 570, 574 (Ct. App. 1989) (successors in interest to bona fide purchaser entitled to receive same protection against unrecorded encumbrance; any knowledge by successor irrelevant). Because defendants' predecessor, Mossman, purchased prior to the recording of the Declaration, defendants claim that it cannot be enforced against them.

The premise of the argument is flawed, however, as the record does not support the conclusion that Mossman lacked notice of plaintiffs' interest. Although he purchased the property one year before the Declaration was recorded, the Goldsmith-to-Mossman deed plainly referenced the existing easement in favor of plaintiffs in the "beach area." While the deed did not specify the permitted uses of the beach area, the record demonstrates that a dock and shed for swimming and boating purposes were fully compatible with the parties' intentions. See *Directors of Seasons on Mount Snow Owners Ass'n v. Seasons Assocs.*, 166 Vt. 618, 618, 693 A.2d 735, 737 (1997) (mem.) (character of easement depends upon intent of parties). The deed to Mossman referenced a state land use permit which noted that a variety of moorings and docks existed along the shoreline of the area; the Declaration underscored the parties' understanding that a dock and shed were compatible with the beach easement; and the dock was installed a year after Mossman's purchase and remained in seasonal use thereafter without objection. Accordingly, we are not persuaded that Mossman was a bona fide purchaser without notice of plaintiffs' interest.[2]

---

[2] While it was not a basis of the court's ruling, this conclusion would equally support a finding that defendants were also on notice of plaintiffs' interest pursuant to the beach-access easement in their deed. Although the court briefly noted that it would not "imply a right to maintain a shed and dock from the language of the deeds," the court was not considering the record as a whole, which demonstrated indisputably that the improvements were within the scope of the beach easement. See *Hutner v. Kellogg*, 563 N.E.2d 1338, 1339-40 (Ind. Ct. App. 1990) (finding that parties intended lakeshore easement to include right to construct and maintain pier for swimming and boating purposes); *Badger v. Hill*, 404 A.2d 222, 226 (Me. 1979) (evidence supported conclusion that easement granting access to river included right to construct and maintain dock). But see *Edwards v. Fugere*, 130 Vt. 157, 162-63, 287 A.2d 582, 586-87 (1972) (evidence did not support conclusion that original grantor's reservation of right-of-way to lake included use of dock).

■ We hold, therefore, that the court correctly enforced plaintiffs' right to the use and enjoyment of the beach area and improvements.

■ In their cross-appeal, plaintiffs challenge the court's separate ruling that the provisions of the Declaration requiring defendants to pay one-tenth of the costs of maintaining and insuring the beach area and improvements constituted restrictive covenants which were unenforceable because defendants had succeeded to Mossman's status as a bona fide purchaser without notice.[3] As discussed above, the premise of the court's ruling was flawed, as Mossman was not a bona fide purchaser without notice. Furthermore, as noted, a diligent inquiry about the dock would have readily revealed plaintiffs' interest. Accordingly, we conclude that defendants were on notice of, and subject to, the terms of the Declaration requiring their contribution of one-tenth of the annual budget for the beach area and improvements.

*That portion of the judgment enforcing plaintiffs' right to the use and enjoyment of the beach area and improvements is affirmed. That portion of the judgment declining to enforce defendants' obligation under the Declaration to contribute one-tenth of the annual budget for the beach area and improvements is reversed; plaintiffs may enforce defendants' obligation under the Declaration.*

---

[3] The court nevertheless ordered defendants to contribute one-tenth of the costs of insurance under an unjust enrichment theory.