Ninevah Foundation v. Lorenz, No. 198-3-05 Rdcv  (Norton, J., Dec. 23, 2005)


[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]



**STATE OF VERMONT**            **SUPERIOR COURT**
**RUTLAND COUNTY, SS.**         **DOCKET NO. 198-3-05Rdcv**


| | |
|---|---|
| **NINEVAH FOUNDATION,** | ) |
|      **Plaintiff,** | ) |
| | ) |
|      **v.** | ) |
| | ) |
| **STEVEN J. LORENZ, NANCIE K.** | ) |
| **LORENZ, ROGER MCNAMARA and** | ) |
| **THERESA MCNAMARA,** | ) |
|      **Defendants.** | ) |


### ORDER ON CROSS-MOTIONS
### FOR SUMMARY JUDGMENT

This case concerns a parcel of land (the Property) located on Lake Ninevah in the Town of Mount Holly, Vermont.  Plaintiff seeks injunctive relief and damages for the alleged violation of restrictive covenants entered into by the parties' predecessors in interest.  Defendants claim that the restrictions are unenforceable as noncompliant with Vermont's recording act.  Each party has moved for summary judgment.  The material facts are generally agreed upon as follows.

Plaintiff Ninevah Foundation is a nonprofit corporation whose purpose is to protect the natural character of Lake Ninevah and its surrounds.  The Lorenz Defendants and the McNamara Defendants each own a one-half undivided interest in the Property,

which is located on the northern shore of Lake Ninevah. The Property measures 100 feet by 100 feet, or approximately one quarter acre. Plaintiff owns several thousand acres of land in the area, including approximately eighty to ninety percent of the shoreline of the lake, and borders the Property on its northern and eastern sides.[1]

On July 5, 1964 the Wilderness Corporation and Donald Jefferson, then the owner of the Property, entered into an agreement (the Wilderness-Jefferson Agreement) whereby Jefferson agreed to sell to the Wilderness Corporation certain real estate. While not involving a conveyance of the Property itself, the contract included restrictions on the Property such "that no building may be put up there except a picnic table and a toilet, reasonable clearing of dead wood and brush to be permitted." The agreement further provided that "[i]t is further understood that Donald Jefferson will have the privilege of making a two-car parking lot along the north-east border of his lake-side lot, with entrance along the north-east border of the Charles Rice lot." The Wilderness-Jefferson Agreement was never recorded.

Donald Jefferson conveyed the Property to David Wagner on May 9, 1990. The deed stated that it was subject to the restrictions in the Wilderness-Jefferson Agreement, though it did not include the language of those restrictions. David Wagner then conveyed the Property to Defendant Steven Lorenz on May 29, 1990. This deed also stated that it was subject to the restrictions in the Wilderness-Jefferson Agreement, a clause that was inserted in the deed only after negotiations with the seller, during the course of which a copy of the Wilderness-Jefferson Agreement was forwarded to Lorenz' attorney. (Affidavit of James P. W. Goss.) Lorenz transferred a one-half undivided interest in the

---

[1] Defendants have objected to the Ninevah Foundation's description of itself, its holdings, and its purposes. This description is included for background only.

parcel to the McNamara Defendants in 1992, and the remaining one-half interest to himself and Defendant Nancie Lorenz in 1993. Each of the deeds states that it is subject to the restrictions in the Wilderness-Jefferson Agreement. On March 31, 2001, the Wilderness Corporation conveyed all of its interests in real property in Mount Holly to Plaintiff.

Since 1996, Defendants have built a dock on the Property, as well as a structure that is not within the "picnic table or toilet" limitation in the Wilderness-Jefferson Agreement.[2]

Plaintiff has moved for partial summary judgment on the issue of whether the Property is subject to the restrictive covenants in the Wilderness-Jefferson agreement, and has requested that the Court order Defendants to remove the dock and building. Defendants have also moved for summary judgment, arguing that the restrictive covenants in the Wilderness-Jefferson agreement are invalid and unenforceable.

### Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). In determining whether a genuine issue of material fact exists, the Court accepts as true allegations made in opposition to the motion for summary judgment, provided they are supported by evidentiary material. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356, 362-63. The nonmoving party also receives the benefit of all reasonable doubts and inferences. Id. When, as here, both parties move for summary judgment,

---

[2] There is also a dispute as to whether Defendants have engaged in clearing the Property beyond the "reasonable clearing of dead trees and brush" permitted in the Wilderness-Jefferson Agreement. As Plaintiff's motion does not request relief for this alleged infraction, the Court does not address it here.

3

each is "entitled to the benefit of all reasonable doubts and inferences when the opposing party's motion is being judged." City of St. Albans v. Northwest Reg'l Planning Comm'n, 167 Vt. 466, 469 (1998) (quoting Tooley v. Robinson Springs Corp., 163 Vt. 627, 628 (1995)).

**Discussion**

Plaintiff seeks summary judgment on the basis that the restrictive covenant in the Wilderness-Jefferson Agreement is enforceable as an equitable servitude or a real covenant. As a general matter, restrictive covenants are enforceable in equity against those who take land with notice of the restriction. Queen City Park Ass'n v. Gale, 110 Vt. 110, 113 (1939); McDonough v. W. W. Snow Construction Co., Inc., 131 Vt. 436, 441 (1973). There is some indication that this is so even where the restriction does not amount to a covenant running with the land or is otherwise insufficient to create a property right. Queen City Park Ass'n, 110 Vt. at 117 ("Restrictive agreements are enforceable in equity against all those who take the estate with notice of them, although they may not be, strictly speaking, real covenants so as to run with the land or of a nature to create a technical qualification of the title conveyed by the deed.") (quoting 14 Am. Jur. 659, § 326). The Restatement of Property, however, takes the view that there is no longer an appreciable distinction between the terms "real covenant" and "equitable servitude," and that each is better analyzed as a covenant running with the land. Restatement (Third) of Property: Servitudes, § 1.4 (2000).

However termed, Plaintiff may enforce the covenant contained in the Wilderness-Jefferson Agreement if that covenant "runs with the land." Chimney Hill Owners' Assoc., Inc. v. Antignani, 136 Vt. 446, 454 (1978). "For a covenant to be enforceable as

4

running with the land, four requirements must be met: a writing, intent, touch and concern, and notice." Chimney Hill at 454-55. See also Albright v. Fish, 136 Vt. 387, 393 n.1 (1978) (contrasting requirements for injunctive relief and damages). Here there is a writing. By its terms, the agreement indicates an intent that the covenant benefit the Wilderness Corporation, its successors and assigns. Albright v. Fish, 136 Vt. 387, 393 (1978) (a building restriction is "so intimately connected with the land as to require the conclusion that the necessary intention for the running of the benefit is present absent language clearly negating that intent."). Furthermore, it is not disputed that the parties to the agreement intended it to be enforceable in perpetuity. (Affidavit of Donald Jefferson at ¶ 5) A covenant restricting development of the land clearly meets the touch and concern requirement. The only remaining element is the notice requirement.

There are two types of notice that could ground enforcement of the restrictive covenant: constructive notice and actual notice. Inquiry notice is a type of actual notice. One on inquiry notice of an interest in property is charged with knowledge of that interest. Hill v. Murray, 56 Vt. 177, 178 (1883) ("a purchaser having notice of an unrecorded deed to a third party, is put upon inquiry and is charged with notice of what he would presumably have learned by reasonable inquiry – in this case, the contents of the deed."); Myers v. LaCasse, 176 Vt. 29, 40 (2003) ("If a party has "sufficient facts concerning [another's] interest in the property to call upon him to inquire, he is charged with notice of such facts as diligent inquiry would disclose."). As one court put it, "[i]mplied actual notice is that which one who is put on a trail is in duty bound to seek to know, even though the track or scent lead to knowledge of unpleasant and unwelcome facts." Hopkins v. McCarthy, 115 A. 513, 515 (Me. 1921).

5

It is clear from the undisputed facts that Defendants had inquiry notice of the restrictive covenants. The deed to Defendant Steven Lorenz stated that it was subject to the Wilderness-Jefferson Agreement, as did the deed to the McNamara Defendants and the deed from Steven Lorenz to Defendants Steven and Nancie Lorenz. When Steven Lorenz acquired the property in 1990, there were significant negotiations concerning the reference in the deed to the Wilderness-Jefferson Agreement, and Lorenz' attorney was provided a copy of the agreement. (Plaintiff's Statement of Undisputed Facts, Affidavit of James P. W. Goss.) As each of Defendants' deeds contained sufficient facts to put them "on the trail" of the restrictions in the Wilderness-Jefferson Agreement, those restrictions are enforceable as covenants running with the land. Hill, 56 Vt. at 178-79.

Defendants counter that the Wilderness-Jefferson Agreement is not enforceable because it does not comply with Vermont's recording statute, and they seek summary judgment on that basis. It is clear that Vermont's recording act, 27 V.S.A. § 342, applies to the covenants contained in the Wilderness-Jefferson Agreement if they are interests in land. For purposes of interpreting statutes, "land" includes "lands, tenements and hereditaments and all rights thereto and interests therein." 1 V.S.A. § 132. See also Deavitt v. Washington County, 75 Vt. 156 (1903) ("an easement is land, under our statute, for it is an hereditament[]"). To the degree that the restrictive covenants at issue are interests in land, they constitute a "conveyance of land" to which the recording act applies. 27 V.S.A. § 342. It is undisputed that the Wilderness-Jefferson Agreement did not comply with the requirements of the recording statute, and it therefore follows that the Wilderness-Jefferson Agreement itself is ineffectual to hold the Property against Defendants. 27 V.S.A. § 342 (an interest in land "shall not be effectual to hold such

6

lands against any person but the grantor and his heirs, unless the deed or other conveyance is acknowledged and recorded as provided in this chapter."). See also Restatement (Third) of Property: Servitudes, § 2.7 ("The formal requirements for creation of a servitude are the same as those required for creation of an estate in land of like duration.").

Defendants, however, overlook the principle that Vermont's recording act only protects bona fide purchasers. Thus, while it does not specifically use the word "notice" as do those of some other states, the act does not protect subsequent purchasers with actual or inquiry notice of prior claims. Richart v. Jackson, 171 Vt. 94, 98 (2000); Hemingway v. Shatney, 152 Vt. 600, 603-604 (1989); Merritt v. Merritt, 146 Vt. 246, 252 (1985). As discussed above, the references in the Defendants' deeds to the restrictions in the Wilderness-Jefferson agreement operated to put Defendants on inquiry notice of Plaintiff's interest, and a "diligent inquiry … would have readily revealed the existence of the [agreement]." Richart, 171 Vt. at 98. "Accordingly, it is immaterial whether, as defendants claim, the [agreement] was technically outside their chain of title, as defendants were not bona fide purchasers without notice." Id. Because Defendants were, at least, on inquiry notice of the restrictive covenants in the Wilderness-Jefferson Agreement, they are bound by those restrictions.

Because Defendants are not bona fide purchasers, their reliance on Pennock v. Goodrich, 104 Vt. 134 (1932), is misplaced. That case held that an executory contract to sell, though recorded, was not capable of giving constructive notice to a subsequent purchaser of a right-of-way agreement it contained. Id. at 139. Because the court found that there was "no other evidence in the case tending to show that the defendants had any

7

notice of such agreement," it avoided the issue of whether actual notice would have supported enforcement, instead finding an easement by necessity. Id. In the instant case, there is no question that the Wilderness-Jefferson Agreement is incapable of giving constructive notice of the restrictions it contains. But because Defendants were on inquiry notice of the restrictions, it is immaterial that they were not on constructive notice. The Hemingway court makes this distinction clear by noting that a subsequent purchaser with actual notice of a prior executory contract would "stand in seller's shoes and hold title only in trust for the conveyance of the property to … the prior purchasers." 152 Vt. at 602.

That one with actual notice of a prior claim is not protected by the recording act is also supported by Richart v. Jackson, 171 Vt. 94 (2000), in which the court held that a landowner was bound by a restrictive covenant regarding use of a beach and dock. In that case, the original owner had entered into a restrictive agreement, sold the land, and then recorded the agreement. In determining whether the buyer's successor in title was bound by the restriction, the court rejected the claim that the successor was protected by the "shelter rule," which provides that "one who … takes an interest in property from a bona fide purchaser, may be sheltered in the latter's protective status." Richart, 171 Vt. at 99 (quoting Sun Valley Land & Minerals, Inc. v. Burt, 853 P.2d 607, 613 (Idaho Ct. App. 1993). Although the restriction was not recorded at the time the prior owner purchased the property, and therefore did not comply with the recording act, the court rejected the shelter rule argument because it was "not persuaded that [the prior owner] was a bona fide purchaser without notice of plaintiffs' interest." Id. In other words, the prior owner was bound by the covenant because he had notice of that covenant, even

8

though it was unrecorded and therefore incapable of giving record notice under Vermont's recording statute. Accord 20 Am. Jur. 2d Covenants, Conditions, and Restrictions. §308 (1965)("[i]f the purchaser has actual notice of an agreement containing restrictions, it is not material that the agreement is not of record."); Hein v. Lee , 549 P.2d 286, 292 (Wyo. 1976) (sawmill operation enjoined where property owner had actual notice of restrictive covenant improperly recorded); Grange v. Korff, 79 N.W.2d 743 (Iowa 1956) (purchaser with actual notice bound by unrecorded restriction on development).

In sum, Defendants were on inquiry notice of the restrictions in the Wilderness-Jefferson Agreement; those restrictions are therefore enforceable even if they are not in compliance with the recording act. Richart, 171 Vt. at 98. Because they are not protected by the recording statute, Defendants' are not entitled to judgment as a matter of law and their motion must be denied. Because the restrictions are enforceable as covenants running with the land, Plaintiff is entitled to judgment as a matter of law and its motion must be granted. V.R.C.P. 56(c)(3).

### Order

For the foregoing reasons, Plaintiff's motion for partial summary judgment is **GRANTED**. Defendants' motion for summary judgment is **DENIED**.

Dated at Rutland, Vermont this _____ day of _____, 2005.

_____
Hon. Richard W. Norton
Presiding Judge
Rutland Superior Court

9