992 P.2d 751

BOUTEN CONSTRUCTION COMPANY,
Plaintiff–Respondent,

v.

H.F. MAGNUSON COMPANY,
Defendant–Appellant,

and

M & L Land Company, an Idaho corporation; The Wallace Inn, Inc., an Idaho corporation; The Trustees of Washington–Idaho–Montana Carpenters–Employers Retirement Trust Fund; The Trustees of Washington–Idaho–Laborers–Employers Pension Trust Funds; The Trustees of Washington–Idaho Cement Masons–Employers Retirement Trust Fund; The Trustees of Washington–Idaho–Montana Carpenters–Laborers Retirement Trust Fund; Johnson Masonry, Inc., a Washington corporation; Associated Terrazzo & Ceramics, Inc., a Washington corporation; Richard Doering and Jane Doe Doering, husband and wife, residents of Kootenai County, State of Idaho, d/b/a Division Eight; Aztech Electric, Inc., a Washington corporation; Sun Contracting of Spokane, Inc., a Washington corporation; Viking Automatic Sprinkler Company, an Idaho corporation; Performance Contracting, Inc., a Kansas corporation; Robert K. Monroe and Jodie Monroe, husband and wife, residents of Spokane County, State of Washington, d/b/a Design Wall Covering; Dupree Building Specialties, a Washington sole proprietorship; and McClintock & Turk, Inc., a Washington corporation, Defendants.

Bouten Construction Company,
Plaintiff–Respondent,

v.

The Trustees of Washington–Idaho–Montana Carpenters Employers Retirement Trust Fund; The Trustees of Washington–Idaho Cement Masons Employers Retirement Trust Fund; The Trustees of Washington–Idaho–Montana Carpenters Laborers Retirement Trust Fund; and The Trustees of Washington–Idaho–Montana Carpenters Laborers Retirement Trust Fund, Defendants–Appellants,

and

M & L Land Company, an Idaho corporation and H.F. Magnuson Company; The Wallace Inn, Inc., an Idaho corporation; Johnson Masonry, Inc., a Washington corporation; Associated Terrazzo & Ceramics, Inc., a Washington corporation; Richard Doering and Jane Doe Doering, husband and wife, residents of Kootenai County, State of Idaho, d/b/a Division Eight; Aztech Electric, Inc., a Washington corporation; Sun Contracting of Spokane, Inc., a Washington corporation; Viking Automatic Sprinkler Company, an Idaho corporation; Performance Contracting, Inc., a Kansas corporation; Robert K. Monroe and Jodie Monroe, husband and wife, residents of Spokane County, State of Washington, d/b/a Design Wall Covering; Dupree Building Specialties, a Washington sole proprietorship; and McClintock & Turk, Inc., a Washington corporation, Defendants.

Nos. 22707, 23681.

Supreme Court of Idaho,
Lewiston, April 1999 Term.

Nov. 15, 1999.

Rehearing Denied Feb. 8, 2000.

Evans, Keane, Kellogg; Fred M. Gibler, Kellogg; John F. Magnuson, Coeur d'Alene, for appellants. Fred M. Gibler and John F. Magnuson argued.

McCormick, Dunn & Black, P.S., Sandpoint, Idaho and Spokane, Washington. Joel C. McCormick III argued.

KIDWELL, Justice.

The parties dispute the interpretation of a construction contract and an award of both pre- and post-judgment interest. The contractor and the owner agreed to a "cost plus"

construction contract for the Wallace Inn in Wallace, Idaho, with a set maximum price. Because of changes made by the owner during construction, the costs greatly exceeded the maximum price, and upon completion, the owner refused to pay the difference. The district court and the Court of Appeals found for the contractor and awarded most of the costs as well as pre- and post-judgment interest on the award. The owner appeals the judgments on both the award and the interest. We affirm in part and reverse in part.

## I.

### FACTS AND PROCEDURAL HISTORY

Bouten Construction Company (Bouten) entered into an agreement to build the Wallace Inn (Inn) for H.F. Magnuson Company (Magnuson) on land owned by M & L Land Company (M & L) in Wallace, Idaho. The contract, signed on June 17, 1988, was a "cost plus" agreement with a set "Guaranteed Maximum Price" (GMP). However, because detailed plans for the Inn had not been prepared by Magnuson's architect prior to the signing of the contract, the amount of the GMP was left open when the contract was signed. The contract specified that a GMP would be required when the design development drawings had been completed.

Bouten, however, did not wait for the detailed plans to be completed, and three days after the contract was signed, sent Magnuson a letter setting a GMP of $1,790,643. Bouten based this price on its experience in the construction business and on the architect's representations that the Inn would be of similar quality as the "Best Western" motel-chain standards. Bouten was familiar with Best Western motels because it was completing a remodeling project on a Best Western motel in the area.

The full agreement between the parties consisted of three documents: (1) the "Standard Form of Agreement Between Owner and Contractor," executed on June 17, 1988, (2) the "General Conditions of the Contract for Construction," also dated June 17, 1988, and (3) a letter from Bouten to Magnuson

setting a GMP of $1,790,643, dated June 20, 1988.

The contract contained provisions for modifying the GMP, which allowed the GMP to be "adjusted up to 5% based upon final contract documents being furnished by the architect." The contract further provided that "[i]f changes are greater than a five percent (5%) add, the scope of the work will be negotiated downward to a mutually agreeable Guaranteed Maximum Price with the changes directed by the owner." The change orders were required to be in writing and issued by the architect.

Throughout the construction process, Magnuson ordered that changes in the original design drawings be made. Since the architect was having difficulty producing the plans in a timely fashion, at some point Magnuson told the architect to concentrate on the plans and not to worry about the change orders.

When the Inn was completed in May of 1989, Bouten sought to collect from Magnuson the amount of the excess in the GMP that was attributable to the changes in the plans made periodically by Magnuson during construction. When Magnuson refused to pay, Bouten sued Magnuson for breach of contract and M & L for foreclosure of Bouten's lien on the property. Suit was filed on August 29, 1989.

Following a court trial, the district court held that there had been a contract and that Bouten should recover for some of its increased costs. Further, the district court found that while Magnuson had agreed to changes without requiring change orders, Magnuson had not waived or abandoned the GMP. The court's memorandum opinion was dated March 5, 1991.

Bouten appealed the decision of the district court, and the Court of Appeals affirmed in part and remanded in part. *Bouten Constr. Co. v. M & L Land Co. (Bouten I )*, 125 Idaho 957, 877 P.2d 928 (Ct.App. 1994). The Court of Appeals found that the delay in the creation of the architect's plans prevented a meaningful GMP from being set.

*Id.* at 964, 877 P.2d at 935. The Court of Appeals also upheld the district court's factual finding that while Magnuson had not *abandoned* the GMP, it had indirectly agreed to increase the price due to the changes in the plans. *Id.* at 965, 877 P.2d at 936. Magnuson argued that since the required procedures had not been followed, it was not liable for the additional costs of the changes. The Court of Appeals did not find this argument persuasive however, since it was Magnuson who told the architect to concentrate on the plans and not to prepare any more change orders. *Id.* at 967, 877 P.2d at 938.

The Court of Appeals remanded the case to the district court with instructions that it allow Bouten to prove the amounts expended due to the changes in the plans. *Id.* at 974, 877 P.2d at 945. On remand, Bouten had the burden of proving: (1) that particular changes had been made, (2) that the changes were more costly, (3) the amount of the increased costs, and (4) that each increased cost was reasonable. *Id.* at 968, 877 P.2d at 939. The district court was permitted, but not required, to hear additional evidence. *Id.*

On December 5, 1995, the district court issued its first supplemental judgment, finding in favor of Bouten. The court heard no new evidence, and based its findings on the evidence previously admitted. The district court awarded Bouten $298,609.54 for additional costs of construction. This amount was *nunc pro tunc* back to April 1, 1991, the date of the original judgment, which provided Bouten with interjudgment interest.

The district court also awarded Bouten pre-judgment interest at the statutory rate from July 21, 1989, to April 1, 1991, because it found the damages were liquidated. Additionally, the district court awarded Bouten $28,037.86 for fees and costs associated with Bouten's having to prove the additional amounts under the contract, and awarded post-judgment interest on the entire award of $388,482.60 from April 1, 1991, until the award was paid in full. Finally, the court determined that Bouten's lien was inferior to the other lien claimants on the M & L property.

On January 23, 1997, the district court entered a second supplemental judgment on remand. This judgment awarded Bouten attorney fees calculated at $126,716.64. This figure was based on a 20% contingent fee agreement between Bouten and its attorneys following the trial. The district court further awarded Bouten continuing post-judgment interest on the $388,482.60 from April 1, 1991, until paid in full. Each of the awards of interest was made pursuant to the statutory interest rate as set forth in I.C. § 28–22–104(2). The district court further modified its prior judgment and ruled that Bouten's lien claim should be superior to all other lien claimants. Magnuson appeals the decision of the district court on remand.

## II.

### STANDARD OF REVIEW

The factual findings of a trial court will not be set aside unless they are clearly erroneous. *Hunter v. Shields,* 131 Idaho 148, 151, 953 P.2d 588, 591 (1998). Findings of fact which are based on substantial and competent evidence will not be overturned on appeal, even if the evidence is conflicting. *The Highlands, Inc. v. Hosac,* 130 Idaho 67, 69, 936 P.2d 1309, 1311 (1997); *Rice v. Hill City Stock Yards Co.,* 121 Idaho 576, 579, 826 P.2d 1288, 1291 (1992). The credibility and weight to be given evidence is in the province of the trial court. *Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp.,* 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990). In light of the trial court's role in weighing the evidence and judging credibility, this Court liberally construes the trial court's findings of fact in favor of the judgment entered. *Id.* However, when the issue is one of law, the Court exercises free review of the trial court's decision. *Savage Lateral Ditch Water Users Ass'n v. Pulley,* 125 Idaho 237, 242, 869 P.2d 554, 559 (1993). This appeal contains issues of both fact and law.

## III.

### ANALYSIS

A. **The District Court Correctly Found that Bouten Proved, with Necessary Certainty, the Increased Costs of the Changes Made by Magnuson.**

Magnuson contends that, on remand, Bouten failed to meet its burden of proof for each

of the changes made to the original design drawings. Magnuson also argues that the district court did not adjust the awards for the increased costs, but instead, simply awarded Bouten all the costs claimed.

On December 5, 1995, the district court entered supplemental findings of facts in response to the order of the Court of Appeals on remand. It found that Bouten had met the burden of proof required by the Court of Appeals. The court then set out thirty-two items, or groups of items, that would be awarded to Bouten.

In assessing Magnuson's attack on the adequacy of the evidence, this Court must determine whether the findings of fact are clearly erroneous based on the evidence presented at trial.

■ This Court will find that the district court's judgment is clearly erroneous only when it is not supported by "substantial and competent, although conflicting, evidence." *Kootenai Elec. Coop., Inc. v. Washington Water Power Co.*, 127 Idaho 432, 434, 901 P.2d 1333, 1335 (1995). "Substantial and competent evidence" is "relevant evidence which a reasonable mind might accept to support a conclusion." *Mancilla v. Greg*, 131 Idaho 685, 687, 963 P.2d 368, 370 (1998).

On remand, the district court had before it all of the evidence admitted at trial. The Court of Appeals directed, on remand, that additional evidence needed to be taken only if Bouten could establish that it was kept from introducing all of its evidence at trial as a result of the district court's error. Absent this showing, the district court was to decide the issue "upon the evidence previously offered at trial." *Bouten I*, 125 Idaho at 968, 877 P.2d at 939.

The transcript of the trial lists ninety-six exhibits which were admitted. Some of these exhibits were created for the specific purpose of summarizing and explaining the changes and increased costs ordered by Magnuson. For example, one of Bouten's witnesses testified that Exhibit 21 was created to explain "the total cost of the work[,] in a breakdown of assignment to subcontractors and various elements that were either changed, or added, or modified during the course of the work."

On remand, the district court prepared findings of facts based on the evidence. We find that when the evidence is reviewed in its totality, there is substantial evidence upon which the district court based its decision.

**B. The District Court's Award of Damages to Bouten for the Increased Costs was Consistent and Non–Arbitrary.**

Magnuson further argues that the decision of the district court on remand was not in accord with the directions of the Court of Appeals. Additionally, Magnuson contends that the district court's decision was not consistent with its prior rulings, and was arbitrary because it did not provide specific findings on each of the increased costs awarded.

On remand from the Court of Appeals, the district court was directed to review the record, and take additional evidence if needed to determine whether Bouten had met its burden of proof for each of the increased costs above the GMP. *Bouten I*, 125 Idaho at 968, 877 P.2d at 939.

The Court of Appeals noted:

The trial court's findings of fact and conclusions of law, although extensive and well-prepared, discuss only certain of [Bouten's] list of changes. While the court explained why [Bouten] was allowed additional costs for some of the claimed changes, it is not exactly clear why the court denied relief of the remainder.

*Id.*

Also upon remand, the district court allowed Bouten additional costs over and above the GMP. The court specified thirty-two items, or groups of items, that it found Bouten should recover. For each of these items, the district court found that Bouten had met its burden of proof.

While the findings of the district court on remand are not as specific and detailed as those produced at the initial trial, we find that, when considered overall, they are sufficient to comply with the directions of the Court of Appeals on remand. The district court specifically set forth each item that was

to be reviewed and then ruled on which costs Bouten had proved to be reasonable.

### C. This Court Declines to Address the Issue of Whether Magnuson Was Credited for Instances Where the Subcontractors' Bids Were Less Than That Expected in Bouten's Estimate.

Magnuson argues that the contract with Bouten provided that any savings in the subcontractors' bids over the GMP was to be passed on to Magnuson. However, Magnuson did not raise this issue at trial.

Magnuson contends that the issue was raised below because it is tangentially referred to in Bouten's plaintiff's reply memorandum pursuant to the order of August 4, 1994. However, this memorandum was filed in response to the order on remand after trial and after the appeal to the Court of Appeals. Thus it was not raised at the trial court level.

The Court of Appeals has ruled that "under the 'law of the case' principle, on a second or subsequent appeal the courts generally will not consider errors which arose prior to the first appeal and which might have been raised as issues in the earlier appeal." *Hawley v. Green,* 124 Idaho 385, 392, 860 P.2d 1, 8 (Ct.App.1993). Therefore, since the issue was not raised at the trial court level nor to the Court of Appeals on the first appeal, it will not be considered by this Court. *See, Post Falls Trailer Park v. Fredekind,* 131 Idaho 634, 637, 962 P.2d 1018, 1021 (1998).

### D. The District Court Erred in Awarding Pre–Judgment Interest to Bouten on Unliquidated Claims.

It is settled law in Idaho that pre-judgment interest is available only when damages are liquidated or are ascertainable by mere mathematical process. *Doolittle v. Meridian Joint Sch. Dist. No. 2,* 128 Idaho 805, 814, 919 P.2d 334, 343 (1996); *Pocatello Auto Color, Inc. v. Akzo Coatings, Inc.,* 127 Idaho 41, 46, 896 P.2d 949, 954, (1995); *Ervin Constr. Co. v. Van Orden,* 125 Idaho 695, 704, 874 P.2d 506, 515 (1993); *Barber v. Honorof,* 116 Idaho 767, 770, 780 P.2d 89, 92 (1989).

Even though pre-judgment interest can be allowed by an agreement in a contract or by statute, under either, a grant of pre-judgment interest requires a showing that the damages were liquidated. When pre-judgment interest is granted under I.C. § 28–22–104, governing the legal rate of interest on judgments, the amount to bear interest must be liquidated. *See Ervin Constr. Co.,* 125 Idaho at 704, 874 P.2d at 515. Likewise, when pre-judgment interest is awarded under the terms of the contract, the amount must be liquidated or ascertainable by mere mathematical process. *Barber v. Honorof,* 116 Idaho at 770, 780 P.2d at 92.

Bouten relies on *Rosecrans v. Intermountain Soap & Chemical Co.,* 100 Idaho 785, 605 P.2d 963 (1980), for the proposition that an agreed-upon interest rate in a contract does not require the damages to be liquidated. However, Bouten's reliance is misplaced. In *Rosecrans,* this Court noted that "pre-judgment interest should not be allowed when the principal amount of liability was unliquidated." *Id.* at 788, 605 P.2d at 966 (citing *Farm Dev. Corp. v. Hernandez,* 93 Idaho 918, 920, 478 P.2d 298, 300 (1970)). Furthermore, the Court found that "[i]n the instant case, the contractual liability is readily ascertainable." *Id.*

The issue then before this Court is whether Bouten's damages, which are the increased costs of construction, were liquidated. In *Farm Development Corp.,* this Court denied pre-judgment interest where the amount of liability was disputed by the parties. *Farm Dev. Corp.,* 93 Idaho at 920, 478 P.2d at 300. This Court found that the price was set in the contract, but because there was conflicting evidence of the price actually paid and the actual value of the product, the amount was not "ascertainable by mere mathematical processes." *Id.* (internal citation omitted).

Here, Bouten was required, on remand, to establish that each of the increased costs was the result of changes ordered by Magnuson. Bouten also had to present proof that each change was more costly and that the amount of the increased change was rea-

sonable. On remand, the district court was instructed to weigh the evidence presented by Bouten and determine whether it was reasonable. As discussed above, the district court was given the option of hearing new evidence if needed; however, the court decided to proceed with the evidence previously established at trial. *Bouten I,* 125 Idaho at 968, 877 P.2d at 939.

The district court found that some, but not all, of the changes had been proven to be reasonable. The amount of damages became liquidated when the district court determined which of the amounts had been proven to be reasonable. Until the district court ruled on which of the costs were proven reasonable, the amount of Bouten's damages was not readily ascertainable. This Court has held that when damages are not readily "ascertainable prior to the proceedings on remand," they are not liquidated. *Long v. Hendricks,* 117 Idaho 1051, 1054, 793 P.2d 1223, 1226 (1990). Our holding is in accord with what this Court has determined to be the prevailing view on pre-judgment interest. *See, e.g., Miller v. Botwin,* 258 Kan. 108, 899 P.2d 1004, 1012 (1995); *Northern Montana Hosp. v. Knight,* 248 Mont. 310, 811 P.2d 1276, 1282 (1991); *Pierce Couch Hendrickson Baysinger & Green v. Freede,* 936 P.2d 906, 914 (Okla.1997); *Cornia v. Wilcox,* 898 P.2d 1379, 1387 (Utah 1995); *Public Util. Dist. No. 1 v. International Ins. Co.,* 124 Wash.2d 789, 881 P.2d 1020, 1032 (1994).

Under these circumstances the increased costs which Bouten sought as damages were not readily ascertainable until the district court ruled. Therefore, the district court's award of pre-judgment interest is reversed.

### E. The Award of Interjudgment Interest was Improper.

On remand, the district court found that Bouten was entitled to additional sums under the construction agreement for changes that had been made by Magnuson. The district court awarded Bouten interest on the amount of the additional sums, which was to run from April 1, 1991, the date of the original judgment to January 23, 1997, the entering of the second supplemental judgment on remand. Magnuson disputes this

award of interjudgment interest arguing that it is not consistent with Idaho case law. We agree.

In *Long v. Hendricks (Long III ),* 117 Idaho 1051, 793 P.2d 1223 (1990), this Court considered an award of interjudgment interest similar to the award to Bouten. In that instance, plaintiff Long sued Hendricks for lost wages and for medical expenses arising out of an automobile accident. The district court awarded Long $21,027.85 in damages, $2,000 of which was for lost wages. *Long v. Hendricks (Long I ),* 109 Idaho 73, 75–76, 705 P.2d 78, 80–81 (Ct.App.1985). On Long's first appeal, the Court of Appeals remanded the case to allow the district court "to reconsider, and to make more particular findings on, the issue of lost wages." *Id.* at 79, 705 P.2d at 84. Also on remand, the district court was directed to provide findings as to why some of Long's medical expenses had been granted and others were not. These findings were essential for the Court of Appeals to review "whether the court's failure to include them was oversight or as a result of a determination to exclude them." *Id.*

On remand, the district court ruled that Long was entitled to an additional award of $21,100 for lost wages and $899.79 in medical expenses. *Long v. Hendricks (Long II ),* 114 Idaho 157, 159, 754 P.2d 1194, 1196 (Ct.App. 1988). In Long's second appeal, *Long II,* Long argued that both increased awards for lost wages and medical expenses should be *nunc pro tunc* to the date of the original judgment, and that post-judgment interest should run from that time, thus giving Long "interjudgment" interest. *Id.* at 160, 754 P.2d at 1197.

In its second opinion, the Court of Appeals affirmed the district court's denial of interest. *Id.* at 162, 754 P.2d at 1199. On review, Long sought to have this Court reverse the Court of Appeals' decision regarding the post-judgment interest as well as the interjudgment interest. *Long III,* 117 Idaho at 1052, 793 P.2d at 1224. This Court affirmed the Court of Appeals in part and reversed in part.

In *Long III,* this Court held that the lost wage claim was not entitled to interest be-

cause the additional amount awarded was not readily "ascertainable prior to the proceedings on remand." *Id.* at 1054, 793 P.2d at 1226 (quoting *Long II,* 114 Idaho at 162, 754 P.2d at 1199). However, this Court held that the additional medical expenses, which had been overlooked at trial, were entitled to interjudgment interest because they were liquidated. *Id.* at 1055, 793 P.2d at 1227. Thus, where the additional amounts awarded on remand were the result of the district court's factual determination of reasonableness and fair value after reevaluating the evidence, this Court held that interest should run from the date of the supplemental judgment and not from the date of the district court's judgment.

Following this *Long* line of cases, this Court now determines that Bouten's claims were not liquidated at the time of the original decision of the district court. While the evidence was already in the possession of the district court, Bouten's claims were not liquidated until the district court actually entered its findings as to which additional sums should be awarded.

Additionally, this Court has recently clarified that the interjudgment interest allowed in the medical expenses of *Long* were the result of "an oversight of the trial court, which is tantamount to a clerical error." *Weaver v. Searle Bros.,* 131 Idaho 610, 615, 962 P.2d 381, 386 (1998). On remand, the district court in *Bouten I* was to make factual findings as to whether Bouten had met his burden of proof on each of the increased costs. This is considerably more than a mere clerical error. Therefore the district court's award of interjudgment interest was not appropriate and is reversed.

### F. Bouten Is Entitled to the Fixed Rate of Interest Pursuant to I.C. § 28–22–104(2).

Since the award of interjudgment interest to Bouten is disallowed, the issue of which rate to apply to the 1991 judgment is moot. The award of damages to Bouten, which was granted in the district court's second supplemental judgment, should bear post-judgment interest from January 23, 1997.

The rate of interest from the second supplemental judgment until the judgment is paid in full, is the rate set by the formula in I.C. § 28–22–104(2). This statute provides that the legal rate of interest is arrived at by adding five percent to the base rate for the year. The base rate is determined each year by the State Treasurer on July 1 of each year. The base rate, when added to the statutory rate of five percent, equals the legal rate of interest for the succeeding year. Therefore, the legal rate of interest to be applied to Bouten's award of January 1997, is the rate which was in effect on July 1, 1997. However, the question then becomes whether the interest rate for the balance owing should change if the interest rate changes the following year.

The statute states that the interest rate should be applied "to all judgments *declared* during such succeeding twelve (12) month period." *Id.* (emphasis added). We resolve the question by a review of former amendments to the current statute.

In 1987, I.C. § 28–22–104 was amended to change the previous fixed interest rate to a variable rate formula. The formula provides that the interest rate should be set on July 1 of each year. The new scheme provided a formula for yearly change, rather than the past method requiring an amendment to the statute to change the rate. 1987 Idaho Sess. Laws ch. 278 § 7.

In 1995, the statute was amended again. This time the legislature added the phrase "to all judgments declared or *remaining unpaid.*" 1995 Idaho Sess. Laws ch. 304 § 1. This clearly shows the legislative intent that the new rate for the year should be applied to *all* judgments existing at the time of the change, not just the new ones declared during the succeeding twelve months. This amendment created a variable interest rate that applied to all judgments entered after July 1, 1987.

In 1996, the legislature again amended the statute, removing the words "or remaining unpaid." 1996 Idaho Sess. Laws ch. 94 § 1. This altered the statute to provide that the interest rate for the year shall be fixed for all new judgments declared during the year. Thus, the interest rate applied to

the district court's 1997 decision will remain the same until the judgment is paid in full, regardless of how the interest rate fluctuates in future years.

### G. The District Court Had Jurisdiction to Determine the Priorities of the Construction Liens on the Property Owned by M & L.

#### 1. *Magnuson has standing to argue the priorities of the lien holders.*

■■■ Bouten argues that Magnuson does not have standing to raise the issue of whether the land owned by M & L, upon which the Inn was built, should be subject to a lien by Bouten against Magnuson.

Idaho Appellate Rule 4 allows "[a]ny party aggrieved by an appealable judgment ... [to] appeal such decision to the Supreme Court as provided by these rules." I.A.R. 4. "Any party aggrieved" has been interpreted as any party injuriously affected by the judgment. *State ex rel. Moore v. Howell,* 111 Idaho 963, 965, 729 P.2d 438, 440 (Ct.App. 1986); *see also Roosma v. Moots,* 62 Idaho 450, 455, 112 P.2d 1000, 1002 (1941).

In its second supplemental judgment, the district court held that Bouten had a superior lien over other liens on the M & L land. One of the others named as having an inferior claim was H.F. Magnuson Company. This decision directly affected Magnuson and its ability to foreclose on its lien, should it decide to do so. Therefore, Magnuson is a party aggrieved by the district court's decision on this issue and has standing to raise this issue on appeal.

#### 2. *Bouten's lien on the property on which the Inn is located is limited to Magnuson's interest in the property.*

■■■ Through the course of these proceedings, Bouten has been awarded damages on several different claims. In the first trial, Bouten was awarded damages against M & L. That judgment was satisfied prior to the first appeal, and therefore M & L is not a party to this appeal.

Since the original award to Bouten, the district court has twice awarded Bouten in-

creased costs against Magnuson, once in the supplemental judgment on remand and again in the second supplemental judgment on remand. In both of these awards, Bouten received additional sums against Magnuson only. The district court also determined that the liens of Bouten were superior to the liens of the other parties.

On May 17, 1996, the district court heard a motion for reconsideration, an objection to claim for fees, and a motion for additional fees. During those proceedings, the district court held that M & L had only satisfied the judgment against it for the site work, and therefore, Bouten's lien was proper. The district court did, however, point out that the lien against the property should be limited to Magnuson's interest in the property.

The mechanics lien statute, adopted in 1893, states:

> The land upon which or in connection with which any professional services are performed or any building, improvement or structure is constructed, together with a convenient space about the same, or so much as may be required for the convenient use and occupation thereof, to be determined by the court on rendering judgment, is also subject to the lien, if, at the commencement of the furnishing of professional services or other work or of the furnishing of the material for the same, the land belonged to the person who caused said professional services to be performed or said building, improvement or structure to be constructed, altered or repaired, *but if such person owns less than a fee simple estate in such land, then only his interest therein is subject to such lien.* (emphasis added).

I.C. § 45–505.

This statute has been interpreted by this Court to limit the lien to the amount of interest in the property which is held by the debtor. In *Nelson Bennett Co. v. Twin Falls Land & Water Co.,* 14 Idaho 5, 93 P. 789 (1908), Bennett had agreed to build several miles of canals for the Twin Falls Land & Water Company. When the construction ended, Bennett sought to foreclose its lien on the canal and on the lands adjacent to the

canal. *Id.* at 12, 93 P. at 790. In considering the mechanics lien statute, this Court limited the recovery under the lien "only to the interest, claim and right of the Twin Falls Land & Water Company" and added that "[i]f it has no interest therein, it cannot suffer by a foreclosure sale under this lien." *Id.* at 16, 93 P. at 792.

Similarly, in *Naylor v. Lewiston & Southeastern Electric Railway Co.,* 14 Idaho 789, 96 P. 573 (1908), the Court again limited the recovery of the lien under the mechanics lien statute. There, Naylor's company had performed work for the railway upon the railway easements. *Id.* at 797, 96 P. at 576. The work was not paid for and Naylor filed a lien against the Railway and the easements. *Id.* at 798, 96 P. at 576. This Court ruled that "whatever interest the railway company had in said property would be subject to the lien, whether that be a fee simple or a less title." *Id.* at 806, 96 P. at 579.

Here, Bouten received a lien for the amount of the judgment against Magnuson on the property on which the Inn was constructed. However, as demonstrated by these prior cases and the plain meaning of the statute, Bouten's lien is limited to the amount of interest held by Magnuson in the property. Insofar as the district court found the same, its decision is affirmed.

3. *The district court had jurisdiction to determine mortgage lien priority under I.C. § 45–512 in connection with I.C. § 45–506.*

The first supplemental judgment on remand was entered on January 5, 1996. In this judgment, the district court determined that Bouten's lien was inferior to those of the other parties. However, the district court found in its second supplemental judgment of January 23, 1997, that Bouten's claim should be superior to the other liens. This change was prompted by Bouten's motion to reconsider the first supplemental judgment.

Bouten's motion was made pursuant to I.R.C.P. 60(b), which allows a court to change its final order when the order was based on "mistake, inadvertence, surprise, or excusable neglect." *Id.* However, the claim must be brought within six months of the final judgment. *Id.* Bouten filed its claim on January 11, 1996, only 6 days after the first supplemental judgment on remand was entered. Thus, Bouten's Rule 60(b) motion was timely.

It is necessary to first point out that the district court, in its original post-trial opinion, ranked only the mechanics lien priorities of the subcontractors. Thus, following remand, the district court had a statutory duty to establish both the mechanics lien priorities and the mortgage lien priorities.

The district court stated in its second supplemental judgment on remand that it was setting lien priorities "pursuant to Idaho Code § 45–512." This section, standing alone, does not give the district court jurisdiction to prioritize mechanics liens in relation to mortgages. It is necessary to consider I.C. § 45–506 in conjunction with I.C. § 45–512 when setting the priorities of mortgage liens in relation to the priority of mechanics liens. *See Pacific States Sav. Loan and Bldg. Co. v. Dubois,* 11 Idaho 319, 83 P. 513 (1905).

In its order on motion for reconsideration of the first supplemental judgment on remand, the district court discussed the priorities "pursuant to I.C. § 45–506."

Idaho Code § 45–506 provides:

"The liens provided for in this chapter [mechanics liens] are preferred to any lien, mortgage or other encumbrance, which may have attached subsequent to the time when the building, improvement or structure was commenced, work done, or materials or professional services were commenced to be furnished...."

I.C. § 45–506.

Therefore, the district court did not err when it set the priorities of the mechanics liens and the mortgages. Furthermore, we find that the district court was obligated by statute to do so. Idaho Code § 45–512 directs that "in every case in which different liens are asserted against any property, the court in the judgment must declare the rank of each lien or class of lien...." *Id.* Thus, the district court had to set the priorities of the lien holders which were parties to the

suit. Therefore, we hold that the district court's review of the mortgage lien on the property held by the appellant Trusts was proper. Idaho Code §§ 45–506 and –512 provided the district court the mechanism to set the priority of Bouten's mechanics lien as against the Trusts' mortgage liens.

## H. After Subtracting the Amount of Attorney Fees Based on the Award of Prejudgment Interest, We Affirm the Award of Attorney Fees to Bouten.

In its second supplemental judgment, the district court awarded Bouten $126,716.64 in attorney fees. Magnuson contends that the award was excessive and should not have been based on awards of interest.

 In reviewing the district court's award of attorney fees, we apply an abuse of discretion standard where a dispute concerns the amount of attorney fees that have been properly awarded. *Barber v. State Farm Mut. Auto. Ins. Co.,* 129 Idaho 677, 679, 931 P.2d 1195, 1197 (1997); *Brinkman v. Aid Ins. Co.,* 115 Idaho 346, 351, 766 P.2d 1227, 1232 (1988). Determination of who is a prevailing party is committed to the sound discretion of the trial court and will not be disturbed absent abuse of discretion. *Collins v. Jones,* 131 Idaho 556, 559, 961 P.2d 647, 650 (1998); *see also Cunningham v. Waford,* 131 Idaho 841, 843–44, 965 P.2d 201, 203–04 (Ct.App.1998).

 In determining whether the trial court has abused its discretion, this Court applies the three-factor test fashioned in *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). Those three factors are "(1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason." *Id.*

In its second supplemental judgment on remand, the district court awarded Bouten the following costs and fees.

Overlooked attorney fees and costs . . . . . . 182.56
Fees and costs associated with proving the additional amounts on remand . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28,037.86
*Post remand fees, based on the* contingency fee agreement . . . . . . . . . . 126,716.64

Total fees and costs . . . . . . . . . . . . . $154,937.06

The *post-remand* fees were calculated by adding the amount of the total supplemental award ($298,609.54 additional judgment, plus interest and attorney fees totaling $388,482.60) to the interest accrued to that point ($245,100.59). The total amount, $633,583.19, was then multiplied by the 20% contingency fee, resulting in an award of $126,716.64.

 On review, it appears that the award of attorney fees was based in a small part on the past award of attorney fees. For example, the fee included $182.56 in overlooked attorney fees and $28,037.86 in fees and costs associated with proving the additional amounts on remand. Thus, when the district court awarded fees on the contingency agreement and included these amounts, it awarded attorney fees on the previously awarded attorney fees. Therefore, the award of attorney fees based on the contingency fee agreement should have been based solely on the supplemental amount of $298,609.54. Additionally, since we have held that prejudgment interest was inappropriate, this amount, $61,625.64, should be deducted from the contingency fee base.

Applying the factors from *Sun Valley,* it appears that, with the exception of the inaccurate calculation, the district court did not abuse its discretion in its award of attorney fees to Bouten. The district court properly found that it could award discretionary fees under I.R.C.P. 54. Further, the trial court stated that Bouten should receive costs for each of its separate claims, which included the lien foreclosure proceeding and the contract action. Finally, the district court utilized proper judgment in determining the amount of attorney fees to be awarded.

Therefore, with the exception of the amounts attributable to the pre-judgment interest and the previously awarded attorney fees, the district court did not abuse its discretion in its award of attorney fees.

Hence, Bouten's award of fees and costs is modified as follows:

Overlooked attorney fees .............. 182.56
Fees and costs associated with proving the additional amounts on remand ........................... 28,037.86
Post-remand fees, based on the contingency fee agreement .......... 59,721.91

Total fees and costs .............. $87,942.33

## I. Neither Bouten nor Magnuson Are Entitled to Attorney Fees on Appeal.

 While both sides have requested attorney fees on appeal, neither has presented any argument as to why the fees should be awarded. A party must make argument in the argument section of its brief to receive attorney fees on appeal. I.A.R. 35(a)(6). This Court has held that when attorney fees are requested, but are not discussed in the argument portion of the brief, the request will not be considered. *Weaver*, 131 Idaho at 616, 962 P.2d at 387. Therefore, we do not award attorney fees to either party.

## IV.

## CONCLUSION

Upon extensive review of the ten-year record, hearing and considering oral argument on the matter, we conclude as follows: Because there is substantial evidence in the record to support the district court's findings of facts, we hold that they were not clearly erroneous. Because Magnuson did not properly raise or preserve the issue of whether it should be credited for savings of subcontractor bids over Bouten's estimate, the issue will not be considered on appeal.

Furthermore, since the amounts of additional costs to Bouten for the construction of the Inn over and above the GMP were not readily ascertainable, and thus not liquidated, the district court's award of pre-judgment interest is reversed. The award of post-judgment interest should run from the date of the second supplemental judgment on remand until it is paid in full.

Additionally, we affirm the district court's decision concerning Bouten's priority as a mortgage lien holder. However, Bouten's lien against the property of M & L is limited to the amount of Magnuson's interest in the property. Finally, we affirm the district court's award of attorney fees, as modified by the above findings of this Court. Attorney fees are not awarded to either side on appeal.

Justices SILAK, and SCHROEDER, concur.

Justice SCHILLING, Pro Tem., concurring in part and dissenting in part.

I concur with the Court's opinion except that I respectfully dissent from Sections D and E. In my view, the additional costs claimed by Bouten were capable of ascertainment for purposes of the District Court's award of pre-judgment and interjudgment interest.

## I. INTRODUCTION

It is well settled law in Idaho that pre-judgment interest may be awarded where the amount of liability is liquidated or capable of ascertainment by mere mathematical process. *Farm Development Corp. v. Hernandez*, 93 Idaho 918, 920, 478 P.2d 298, 300 (1970).

Whether damages are sought through contract or statute, a grant of prejudgment interest requires a showing that the damages were liquidated or ascertainable. Idaho Code § 28–22–104 allows for an award of prejudgment interest for money due by express contract or when it becomes due. *Id.; Child v. Blaser*, 111 Idaho 702, 706, 727 P.2d 893 (Ct.App.1986). *See also Bott v. Idaho State Bldg. Authority*, 128 Idaho 580, 592, 917 P.2d 737 (1996), *citing Ervin Constr. Co. v. Van Orden*, 125 Idaho 695, 704, 874 P.2d 506, 515 (1993); I.C. § 28–22–104(1), (2). In a breach of contract action, interest may be awarded from the date of the breach "when the amount upon which the interest is to be based is mathematically and definitely ascertainable." *Ervin Const.*, 125 Idaho at 704, 874 P.2d at 515, *citing Barber v. Honorof*, 116 Idaho 767, 770, 780 P.2d 89, 92 (1989).

A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion. Examples are claims upon promises to pay a fixed sum, claims for money had

and received, claims for money paid out, and claims for goods and services to be paid for at an agreed rate.

*Seubert Excavators, Inc. v. Eucon Corp.*, 125 Idaho 744, 750, n. 2, 874 P.2d 555 (Ct.App. 1993), citing C. McCORMICK, HANDBOOK ON THE LAW OF DAMAGES § 54, at 213; *accord Trimble v. American Sav. Life Ins. Co.*, 152 Ariz. 548, 733 P.2d 1131 (App.1986); *Jet Boats, Inc. v. Puget Sound Nat. Bank*, 44 Wash.App. 32, 721 P.2d 18, 23 (1986).

Equitable principles are emphasized, and prejudgment interest is deemed proper "in order to fully compensate an injured party for the loss of the use of their money during the pendency of the action." *Chenery v. Agri–Lines Corp.*, 115 Idaho 281, 289, 766 P.2d 751 (1988), *citing Ace Realty, Inc. v. Anderson*, 106 Idaho 742, 682 P.2d 1289 (1984); *Mitchell v. Flandro*, 95 Idaho 228, 506 P.2d 455 (1972); *Farm Development*, 93 Idaho at 920, 478 P.2d at 300. *See also Seubert*, 125 Idaho at 750, 874 P.2d 555, citing I.C. § 28–22–104; *Meldco, Inc. v. Hollytex Carpet Mills*, 118 Idaho 265, 270, 796 P.2d 142, 147 (Ct.App.1990); C. McCORMICK, HANDBOOK ON THE LAW OF DAMAGES, ch. 7, § 50, at 205 (1935).

The question here is whether Bouten's damages, the increased costs of construction, were ascertainable prior to remand.

## II. IDAHO CASE LAW

Idaho courts determine on a case by case basis whether damages are liquidated, or ascertainable, for purposes of awarding prejudgment interest. A review of Idaho case law suggests that the trial bench and bar would benefit from clear guidance regarding the application of prejudgment interest.

In *Farm Development*, this Court affirmed the trial court's holding that although the price was set in the contract, conflicting evidence on the amount actually paid and the value of the product led to a conclusion that the amount was not ascertainable. *Farm Development*, 93 Idaho at 920, 478 P.2d 298.

This Court found the principal amount of liability ascertainable in *Rosecrans v. Intermountain Soap & Chem. Co.*, 100 Idaho 785, 788, 605 P.2d 963 (1980), where Rosecrans

was by employment contract to receive $1,000 per month salary and the return of a $10,000 deposit with interest fixed at 8%. In a footnote, this Court distinguished the case from *Farm Development*, noting that while the contract in that case specified that plaintiff was entitled to one-half the cost of fertilizing a piece of land, the amount actually paid for the fertilizer and its value were in dispute. *Rosecrans*, 100 Idaho at 788, n. 1, 605 P.2d at 966, n. 1.

In *Child*, the Court of Appeals found that the value of certain lots was not ascertainable, and prejudgment interest was therefore improper, where the trial court determined the value of the lots based on conflicting expert testimony and differing theories of recovery. *Child*, 111 Idaho at 707, 727 P.2d at 898. However, prejudgment interest was allowed on amounts expended for taxes and water assessments against the lots, as the amounts and dates of those expenditures were not disputed. *Id.* The Court found those amounts were liquidated and plaintiffs were entitled to interest from the dates paid to the date of judgment. *Id.*

This Court found that liability was not mathematically ascertainable under a construction contract that provided for termination of the contract by payment of "an appropriate percentage of work completed based on net contract amount and value of materials installed." *Ervin Construction*, 125 Idaho at 704, 874 P.2d 506. The trial court found that the net contract amount was readily ascertainable at the time of the breach, but numerous defects of construction and materials used affected the value of the installed materials and thus rendered the value unascertainable. *Id.*

In another case, this Court held damages to be "definitely ascertainable" where checks paid and delivered by a certain date allowed the district court to calculate damages by adding up the amount of the checks. *Davis v. Professional Business Services*, 109 Idaho 810, 817, 712 P.2d 511, 518 (1985), *aff'd on r'hrg.*

In contrast, it found that an overpayment amount not sufficiently definite to support a prejudgment interest award where the par-

ties produced conflicting evidence regarding the amount of the overpayment. *Burt v. Clarendon Hot Springs Ranch,* 117 Idaho 1042, 1045, 793 P.2d 715 (1990).

Indefinite damages also barred prejudgment interest where, at the time plaintiff took possession of defendant's cattle, "neither party had any idea how long [plaintiff] would retain the livestock or how much the reasonable costs of caring for them would be." *Nelson v. Holdaway Land and Cattle Co.,* 111 Idaho 1035, 1038, 729 P.2d 1098 (Ct.App.1986). "It was not until the district court, on remand, determined the recoverable loss—based on reasonably incurred costs and fixing the amount of a nominal award—that either party had any idea of the extent of damages." *Id.*

In *Haley v. Clinton,* 128 Idaho 123, 127, 910 P.2d 795 (Ct.App.1996), prejudgment interest was held inappropriate where a main issue at trial was the amount of fees incurred and the amount that had been previously paid. The Court of Appeals found that the amount was not ascertainable nor liquidated because "[i]n order to calculate the amount, the district court was required to make credibility determinations, examine conflicting documentary evidence and choose between competing arguments regarding different sums." *Id.*

In *Seubert,* the appellant argued that the amount due to Respondent was not liquidated until fixed by the district court where both parties had prevailed on offsetting claims. *Seubert,* 125 Idaho at 750, 874 P.2d at 561. The Court of Appeals found that the respondent's claim for the withheld payment of $10,622.93 was clearly for a fixed, liquidated amount. *Id.* Further, "the fact that it was subject to reduction, and was in fact reduced, [did] not change its liquidated character." *Id.*

This Court affirmed the district court's award of prejudgment interest, finding that the principal amount of liability was ascertained by appellant's August 27, 1984, letter to respondent. Additionally, "*substantial and competent evidence* ... support[ed] the conclusion of the district court that the balance of the accounts was ascertained as of that date, since the withheld sum [was] not

... subsequently amended." *Seubert Excavators, Inc. v. Eucon Corp.,* 125 Idaho 409, 416, 871 P.2d 826 (1994) (emphasis added).

## III. DISCUSSION

A review of Washington law also provides guidance on this issue. "A claim is liquidated when damages are easily computed by reference to objective sources." *Flint v. Hart,* 82 Wash.App. 209, 917 P.2d 590, 599 (1996), citing *Walla Walla County Fire Prot. Dist. 5 v. Wash. Auto Carriage,* 50 Wash. App. 355, 358, 745 P.2d 1332, 1335 (1987). "A liquidated claim occurs when the 'evidence furnished data which, if believed, makes it possible to compute the amount [owed] with exactness, without reliance on opinion or discretion.'" *Id.,* citing *Kiewit–Grice v. State,* 77 Wash.App. 867, 872, 895 P.2d 6 (quoting *Prier v. Refrigeration Engineering Co.,* 74 Wash.2d 25, 32, 442 P.2d 621 (1968)), *rev. denied,* 127 Wash.2d 1018, 904 P.2d 299 (1995).

The Court of Appeals of Washington found appellant's claim liquidated where respondent did not offer any evidence of fair market value and did not controvert the witness's testimony or the amount claimed. *Walla Walla County Fire,* 745 P.2d at 1335.

The Washington Court of Appeals, Division 3, found that awards of "reasonable" damages could only be determined through an exercise of discretion after weighing conflicting evidence, opinion, and testimony, and that such subjective analysis would result in unliquidated claim amounts. *Flint,* 917 P.2d at 599. The court held that a prejudgment interest award on a specific claimed amount of attorney fees was proper where its reasonableness was not challenged and the jury was not charged with determining its reasonableness. *Id.*

However, the Supreme Court of Washington has held that it is the character of the claim and not of the defense that determines whether a claim is liquidated or not. *Prier,* 442 P.2d at 627. In this writer's opinion, the *Prier* court offers the correct analysis and easiest application for determining whether sums are liquidated for purposes of prejudgment interest. The court states:

It would seem that the existence of a dispute over the whole or part of the claim should not change the character of the claim from one for a liquidated, to one for an unliquidated, sum, and this conclusion finds support in the cases. * * * The same question, of course, arises in connection with any claims, whether resting upon contract, tort, or quasi contract, which have for their basis allegations that money has actually been received or dealt with under such circumstances that a definite sum is due to the plaintiff. In these cases also the sum is still "liquidated" according to what is believed to be the better view, although the sum is not fixed by agreement and although the facts upon which the claim is based may be disputed, and even though the adversary successfully challenges the amount and succeeds in reducing it.

Under this view, only those claims would be termed "unliquidated" where the exact amount of the sum to be allowed cannot be definitely fixed from the facts proved, disputed or undisputed, but must in the last analysis depend upon the opinion or discretion of the judge or jury as to whether a larger or a smaller amount should be allowed. If this be so, a claim, for the full amount of a note for $1,000 is "liquidated" though the defendant claims, and the evidence is in dispute on such defense, that he has paid half this sum. So also a claim for $1,000 alleged to have been in small amounts at different times embezzled by a bank cashier should be considered "liquidated," though the fact and amount of each separate taking is disputed. In short, it is the character of the claim and not of the defense that is determinative of the question whether an amount of money sued for is a "liquidated sum."

It follows from the foregoing that, where the amount sued for may be arrived at by a process of measurement or computation from the data given by the proof, without any reliance upon opinion or discretion after the concrete facts have been determined, the amount is liquidated and will bear interest.

Id. at 626, citing C. McCormick, Damages (Hornbook Series) § 54 (1935) (Italics by Supreme Court of Washington). Additionally, the Washington court quotes:

"It may be safely said that the tendency has been in favor of allowing interest rather than against it, and that the degree of certainty or ease with which the approximate amount can be ascertained has grown less and less stringent. * * *

"The true principle, which is based on the sense of justice in the business community and on our statute, is that he who retains money which he ought to pay to another should be charged interest upon it. The difficulty is that it cannot well be said one ought to pay money, unless he can ascertain how much he ought to pay with reasonable exactness. Mere difference of opinion as to amount is, however, no more a reason to excuse him from interest than difference of opinion whether he legally ought to pay at all, which has never been held an excuse."

Id. at 627, quoting Laycock v. Parker, 103 Wis. 161, 79 N.W. 327 (1899), as quoted in 5 A. Corbin, Contracts § 1046 n. 69 (1964).

The majority opinion concludes that Bouten's damages were not readily ascertainable until the district court ruled on which of the increased costs were proved reasonable. Conflicting Idaho case law must be carefully examined to clarify this issue, and the opportunity to provide clear guidance should not be overlooked.

Where reasonableness was at issue, this Court found prejudgment amounts unascertainable where the parties introduced conflicting testimony regarding a reasonable hourly rate that the trial court determined was necessary for reaching the amount of damages. Barber, 116 Idaho at 770, 780 P.2d at 92.

Prior to Barber, however, this Court held that an amount was readily ascertainable based on evidence that $10 per hour was a "reasonable charge" for leveling land. Guyman v. Anderson, 75 Idaho 294, 297, 271 P.2d 1020 (1954). In Guyman, the Court found that while the dispute between the parties involved the rate of pay, and no

agreement existed as to what the rate would be, there was

> ... some evidence that $10 per hour is a reasonable charge for leveling land with the equipment used by plaintiff, and that such a rate was charged by others. Although scant, this furnishes some proof of a recognized standard for the determination of the amount due. The above rule [interest on unliquidated claim allowed where amount due can be readily ascertained by mere computation or by a legal or recognized standard] is, therefore, applicable here and interest at the legal rate should have been allowed from the date the work was completed....

*Id.* at 296–297, 271 P.2d at 1021 (citations omitted); *but see* Washington cases, *Tri–M Erectors, Inc. v. Donald M. Drake Co.*, 27 Wash.App.2d 529, 618 P.2d 1341, 1346 (1980) (holding a claim for attorney fees unliquidated where the principal must be arrived at by a determination of reasonableness); *Ski Acres Development Co. v. Douglas G. Gorman, Inc.*, 8 Wash.App. 775, 781, 508 P.2d 1381, 1385 (1973) (holding that where there was a question of reasonableness of the cost of repairs, the claim was unliquidated until resolved by the jury).

Read together, *Barber* and *Guyman* suggest that a determination of "reasonableness" for purposes of awarding prejudgment interest does not immediately render an amount due as "unascertainable." The *Barber* Court found damages unascertainable due to conflicting evidence of reasonableness; the *Guyman* Court indicated that evidence of reasonableness merely supplied some proof of a recognized standard for determination of the amount due.

Bouten had the burden at trial to prove each change made, that the change was more costly, the amount of such increased cost, and that the amount was reasonable. *Bouten Constr. Co. v. M & L Land Co. (Bouten I)*, 125 Idaho 957, 968, 877 P.2d 928 (Ct.App. 1994). The court on remand was directed to base its decision on Bouten's claims for additional costs of changes upon evidence previously offered at trial, unless Bouten showed it was prevented from meeting its burden of proof at trial. *Id.*

This directive led to the analysis that the amounts were not ascertainable until the court made the "reasonableness" determination. If so, any time a party must prove reasonableness it would be deprived of prejudgment interest and no court could award prejudgment interest even though by not doing so it could not afford complete relief. In this case, the district court proceeded by considering only that evidence established at trial, finding that some changes were reasonable based on the evidence presented and others were not.

If a decision not to award interest is based on whether the claim was disputed or litigated, "... prejudgment interest would never be awarded—a party could delay payment without incurring interest expense by disputing and litigating any claim." *Ace Realty*, 106 Idaho at 751, 682 P.2d 1289, citing *e.g., Giant Food, Inc. v. Jack I. Bender & Sons*, 399 A.2d 1293, 1302 (D.C.App.1979); *Fluor Corp. v. U.S. ex rel Mosher Steel Co.*, 405 F.2d 823, 829 (9th Cir.1969). *See also Seubert*, 125 Idaho at 750, 874 P.2d at 561.

Similarly, if this Court allows a determination of reasonableness under these facts to negate prejudgment interest on the additional costs, the effect will be the same. A party could delay payment, waiting until trial to challenge the reasonableness of costs to avoid prejudgment interest, and prejudgment interest would only be allowed in rare circumstances.

Under *Guyman*, a determination of reasonableness merely operates as proof of a recognized standard for determining an amount due. Bouten's burden to show reasonableness did not render the costs claimed unascertainable. Prejudgment interest should be awarded here where the amounts due were determinable by mathematical process. The court determined that an amount was due, Magnuson had the benefit of the amounts expended in construction of the Inn, and the amounts due were calculable by the parties even if disputed.

On the cross appeal in *Bouten*, the Court of Appeals upheld the district court in finding that Bouten had proved the reasonableness of its site-work costs through substantial evi-

dence on the record. *Bouten Const. Co. v. M & L Land Co.,* 125 Idaho 957, 968, 877 P.2d 928 (Ct.App.1994). The substantial and competent evidence included testimony regarding the extent and complexity of the work, the amount of structural material placed on the site, and the fact that the owners had access to all billings submitted by the subcontractor. *Id.* at 973, 877 P.2d 928. The court stated:

> [a]fter considering all the evidence in the record, we conclude that BCC [Bouten] made out a prima facie case that its costs for the site work were reasonable and necessary. In short, there was substantial and competent evidence of the reasonableness of the costs. M & L produced no evidence to prove that any of the claimed costs were unreasonable.

*Id.*

The Court of Appeals was essentially resolving a dispute as to the amounts owed. The amounts owed were capable of ascertainment by mathematical calculation and, although disputed by M & L, were proved by Bouten. Here, the same analysis should apply. Bouten expended certain amounts, capable of mathematical ascertainment. Although HFMCO disputed those amounts, they would have had to produce evidence that they were unreasonable in order to have a particular cost amount reduced. As indicated in *Prier,* 442 P.2d at 626, "where money has actually been received or dealt with under such circumstances that a definite sum is due to the plaintiff, it is the better view that the sum is still 'liquidated,' although the sum is not fixed by agreement and although the facts upon which the claim is based may be disputed, and even though the adversary successfully challenges the amount and succeeds in reducing it."

The reasonableness determination here should be treated as merely the necessity of proving of a recognizable standard, not requiring the exercise of the court's opinion or discretion. The trial court was not required to make decisions regarding value of property, workmanship, or quality of materials used in relation to the additional costs, thus it did not exercise the opinion or discretion that would disallow an award of prejudgment interest. This determination, whether made at trial or on remand, did not affect the character of the claim that specific amounts were due.

Additionally, a party is entitled to prejudgment interest on liquidated sums even where the entire claim is not considered liquidated or ascertainable. *Child,* 111 Idaho at 707, 727 P.2d at 898; *Flint,* 917 P.2d at 599. Therefore, Bouten should not lose its entitlement to all prejudgment interest based on the district court's denial of certain costs.

While no clear authority has been found, this Court could clarify the law and ease its application in the future by determining that prejudgment interest is a finding of fact which shall not be set aside unless clearly erroneous. Although not specifically setting out the standard for review, several Idaho cases suggest that trial courts' decisions regarding prejudgment interest were reviewed as findings of fact. *See Seubert Excavators, Inc. v. Eucon Corp.,* 125 Idaho 409, 416, 871 P.2d 826, 833 (1994); *Ervin Construction,* 125 Idaho at 704, 874 P.2d at 515; *Haley,* 128 Idaho at 126–127, 910 P.2d at 799.

## IV. CONCLUSION

In this court's opinion, prejudgment and interjudgment interest should be awarded in this case for the following reasons:

1. Bouton's damages were ascertainable notwithstanding the directive to the lower court regarding reasonableness;

2. An award of prejudgment interest here would be consistent with this Court's and other courts' movement towards awarding prejudgment interest, thereby affording more complete relief; and

3. The award of prejudgment interest, based on the trial judge's determination that the amount was ascertainable, should be considered a finding of fact subject to review under the "clearly erroneous" standard.

Accordingly, I respectfully dissent.

Justice STEGNER, Pro Tem., concurs.